Donald GREGORY, Sr., doing business as 233 Company, and Donald Gregory, Jr., Plaintiffs,

v.

Aldo L. DiFLORIO, Individually and in his capacity as District Attorney of Niagara County, Lockport, New York; John J. Collins, Individually and in his capacity as Superintendent of Police, City of Niagara Falls, New York; and Albert Lynch, Individually and in his capacity as Head of the Confidential Squad of the City of Niagara Falls Police Department, Defendants.

Civ. No. 1969–121.

United States District Court
W. D. New York.
April 25, 1969.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Herald P. Fahringer, Buffalo, N. Y., of counsel), for plaintiffs.

James Milne (Corp. Counsel), Niagara Falls, N. Y., for defendants Lynch and Collins.

Samuel L. Tavano (Niagara County Atty.), and Shavasp Hanesian (Asst. Dist. Atty.), Niagara Falls, N. Y., for defendant DiFlorio.

CURTIN, District Judge.

By order of this court, dated April 4, 1969, defendants were ordered to show cause why a preliminary injunction, directing the return of plaintiffs' books and other publications now in defendants' possession, custody and control, should not issue on April 9, 1969. The court granted the defendants an adjournment of this return date to April 16, 1969. Apparently because of events occurring on or about April 14 and 15, 1969, plaintiffs, without leave of court, amended their original complaint and requested, in addition to the relief originally asked, an increased amount of $75,000 in money damages and a temporary and permanent injunction enjoining the trial of certain criminal charges instituted in the City Court of Niagara Falls, New York on April 15, 1969 against Donald Gregory, Jr.

On the return date the court heard extensive oral argument of counsel to complement the written briefs submitted by all the parties. Each of the parties agreed that hearing testimony would not assist the court in disposing of the plaintiffs' motion for a preliminary injunction requiring the return of the books seized.

In lieu of any hearing, the parties agreed that the court consider the complaint and various documents on public record, including the affidavits, search warrants and returns of the March 21 and April 2 seizures at plaintiffs' premises. Also considered were several criminal complaints lodged against Gregory, Jr. All these documents and the affidavit of James Milne, Niagara Falls Corporation Counsel, in behalf of defendants Lynch and Collins, were made part of the record. Finally, although no formal answer has been filed by any of the defendants, the defendants were able to agree to certain facts in plaintiffs' verified complaint for the purpose of determining the propriety of the preliminary relief requested.

What follows is a statement of facts which is not disputed and, as such, constitutes the findings of fact by this court at this stage of the proceeding.

Donald Gregory, Jr., plaintiff herein and the defendant in certain criminal actions pending in the City Court of Niagara Falls, New York, manages a

store known as 233 Company in Niagara Falls, New York. The 233 Company is an assumed name at which Donald Gregory, Sr. legally does business. On April 17, 1969, the court, upon motion by the plaintiffs originally named, ordered the addition of the name, Donald Gregory, Sr., as a plaintiff in this action pursuant to Rules 19 and 21 of the Federal Rules of Civil Procedure.

At all times pertinent, defendant, Aldo L. DiFlorio, was employed as the District Attorney of Niagara County. He will be ultimately responsible for the prosecution of the charges lodged against Donald Gregory, Jr. Defendant, John J. Collins, Superintendent of the Niagara Falls Police Department, was in charge of the police officers who participated in the seizures from the plaintiffs' premises. Defendant, Albert Lynch, head of the Confidential Squad of the Niagara Falls Police Department, was apparently personally in charge of the April 2 seizure from plaintiffs' premises.

On or about March 11, 1969, a confidential informant of the Niagara Falls Police Department purchased a book entitled *Casandra* for $6.00. The affidavit which described the purchase of *Casandra* and its contents stated that it was a "magazine entirely of females in a state of undress at various poses, all suggestive or revealing." The affidavit and warrant issued on March 18 did not mention any other titles by name. The warrant did not specifically set forth what should be seized but, in a general fashion, directed the officers to seize "Magazines and books showing obscene photographs * * * depicting sexual conduct far exceeding the limits of candor and affronting the contemporary standards relating to descriptions or representations of sexual matters and all being material which is utterly without any redeeming social value." The judgment of what material would meet this definition was left to the raiding officers.

On or about March 14, 1969, officers and agents of the defendant went to the plaintiffs' premises and purchased three books, *I, Mirage,* and *Duet.* Later, on or about March 17, 1969, officers and agents of the same defendants purchased an additional three books from the plaintiff called *Taunt, Togetherness,* and *Photographing the Female Group.*

On or about March 21, 1969, officers and agents of the Niagara Falls Police Department, apparently under the supervision of Lieutenant John E. Belkota, a member of the Confidential Squad, seized and confiscated approximately 1,000 books and magazines from 233 Company pursuant to a search warrant issued March 18, 1969 by Niagara Falls City Court Judge Peter J. Paonessa. This was the warrant previously described which was based upon the purchase in part of the book, *Casandra.* No adversary hearing on the obscenity issue was held before the issuance of this warrant.

On March 21 plaintiff, Donald Gregory, Jr., was charged on an information laid by the Niagara Falls Police with a violation of Section 235.05 of the Revised Penal Law of New York, McKinney's Consol. Laws, c. 40, for possession of obscene material.

On or about April 2, 1969, under the direction of the defendant, Albert Lynch, officers and agents of the Niagara Falls Police Department returned to the bookstore and confiscated approximately 4,000 books and magazines, along with certain still and motion pictures, from plaintiffs' premises under the authority of a search warrant issued by Judge Paonessa on April 2, 1969. The only title specifically designated in either the affidavit or the search warrant was *Broadway Girls.* Made part of the affidavit supporting the request for a search warrant on April 2, 1969 was information from a confidential informant, whose age is alleged to be 16 years, that he had purchased from the 233 Company a magazine entitled *Broadway Girls* for a price of $5.00. Again, no adversary hearing on obscenity was held prior to issuing this warrant.

At the same time the plaintiff, Donald Gregory, Jr., was charged with a violation of Section 235.21(1) of the Revised

Penal Law of New York for knowingly and unlawfully selling the magazine entitled *Broadway Girls,* an allegedly obscene magazine, to a minor aged 16 years old.

On April 15, 1969, the plaintiff, Donald Gregory, Jr., surrendered himself to officers and agents of the defendants and was arraigned in Niagara Falls City Court upon additional charges of violations of Section 235.05(1) of the Revised Penal Code of New York. Section 235.05 (1) proscribes possession of obscene materials with the intent to promote same. Incorporated by reference in two complaints was the complete list of titles seized from plaintiffs' store both on March 21 and April 2.

All of the approximately 5,000 books taken from the premises at 233 Company have been held and are presently retained by the defendants at the offices of the City of Niagara Falls Police Department. Several of the titles seized, plaintiffs allege, have been adjudicated not obscene by various courts of record in the United States. For example, one of the books seized (6 copies) was entitled *Fanny Hill,* which was held not obscene by the United States Supreme Court in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

At the return date, the defendants made no offer to return any of the books seized. For that matter, because of the large number of different titles seized, allowing the defendants to retain one copy of each title would severely impair the plaintiffs' business. (A quick perusal of the returns indicates an excess of 500 titles was seized.)

The plaintiffs seek money damages, an injunction directing the return of the books and an injunction forbidding the trial of the criminal cases. On the present record, the only question which may be considered is whether or not all or some of the books, magazines and other materials should be returned. At this time, no decision will be made on the question of money damages or the enjoining of the criminal cases. Therefore, the Niagara County authorities are free to press all criminal charges now pending against Mr. Gregory.

The function of this court is not to decide whether or not the publications were obscene, whether or not the warrants issued by the City Court Judge were sufficient, or whether or not Mr. Gregory is guilty or not guilty of the criminal acts charged. These questions and others not dealt with in this decision are for the state court to determine. However, Section 1983 of the Civil Rights Act places upon this court the responsibility to determine whether or not the plaintiffs have been deprived of any of their "rights, privileges or immunities secured by the Constitution and laws" of the United States by officers acting "under color of" state law.

The Fourth Amendment of the Constitution provides that all persons shall be secure from unreasonable searches. The Supreme Court of the United States, in Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and in Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), condemned wholesale seizure of books and magazines without prior adversary hearings on the issue of obscenity.

The affidavit and search warrants used in the *Marcus* case were quite similar to those used here. The Supreme Court directed the return of the books and magazines seized. In Quantity of Copies of Books v. Kansas, before issuing a search warrant, the judge himself read seven of the books. The officers seized 1700 copies of 31 novels. The Supreme Court ordered the materials returned, requiring that an adversary hearing must be held before such a wholesale seizure will be allowed.

In 1967, in a wholesale seizure of books which occurred in Depew, New York, the United States Court of Appeals for the Second Circuit, in Potwora v. Dillon, 386 F.2d 74 (2d Cir., 1967), ordered the re-

turn of books where a seizure was made without a prior adversary hearing on the obscenity question. In the *Potwora* case, before the search warrant was obtained, six of the books were read by the judge who issued the warrant. In addition to these six titles, only an additional four titles were seized. Nevertheless, the court there held that this did not provide adequate protection for the bookstore owner's constitutional rights.

■ The general search warrant which the courts have disapproved of in the cases described, and which was issued in this case, leaves to the judgment of the officers on the scene what is obscene under law and what is not. The question of obscenity must be decided by a court and not by an individual officer. From a practical viewpoint, the facts of this case highlight one of the reasons for this rule. The officers seized a number of titles which courts have found not to be obscene.

■ Section 22–a of the New York Code of Criminal Procedure provides a civil remedy to the District Attorney and the Corporation Counsel by which they may enjoin the sale of obscene materials and also, if the materials are found to be obscene after a hearing, they may be confiscated and destroyed. The use of this remedy was approved by the Supreme Court of the United States in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). This section was again approved by the Supreme Court in *Quantity of Copies of Books,* supra, and *Marcus,* supra.

In the argument before the court, the defendants offered no explanation as to why the adversary hearing required by the Supreme Court was not held.

■ The defendants argue that, before plaintiffs can come into a federal court, they should be required to exhaust their state remedies. One state remedy which would be available to the plaintiffs is Section 813–c of the New York Code of Criminal Procedure. This section provides that, where property is unlawfully seized by officers, the aggrieved person may move for the suppression of the property as evidence and for its return. This argument was considered by the Second Circuit in the *Potwora* case, supra, and rejected. Under the circumstances of this case, Section 813–c of the Code of Criminal Procedure is not an adequate remedy.

Defendants called to the court's attention Section 6301 of the CPLR of New York State. This section provides that a person may make an application for an injunction in the state court. The defendants have pointed to no instance where this section has been used to obtain the return of illegally seized property. This court finds that there would be no reason to believe that this remedy would be helpful to plaintiffs in the protection of their constitutional rights. As observed in *Potwora,* the state courts would not order the prompt return of the materials seized, even after a successful motion to suppress under Section 813–c. There is little reason to suppose that a state court would direct the return of the seized materials under Section 6301.

By carting away their stock in trade, the defendants have summarily put plaintiffs out of business. The procedures followed by the officers here have been condemned on a number of occasions by the federal and state courts. Evergreen Review, Inc. v. Cahn et al., 320 F.Supp. 498 (E.D.N.Y.1964); Tyrone, Inc. v. Wilkinson, 294 F.Supp. 1330 (D. Va.1969); Tenney v. Liberty News Distributors, Inc., 13 A.D.2d 770, 215 N.Y.S. 2d 663 (1st Dept. 1961).

The circumstances described in this case make appropriate the observation made by Justice Brandeis in Olmstead v. United States, 277 U.S. 438, 485, 48 S. Ct. 564, 575, 72 L.Ed. 944 (1928):

"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the om-

nipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means * * * would bring terrible retribution."

The wholesale seizures of the books and magazines on March 21 and April 2 1969 were in violation of the Constitution and laws of the United States, and these articles must be returned to the plaintiffs. This decision does not pertain to the books which were purchased by various officers or other individuals on behalf of the Niagara Falls Police Department. Therefore, the books *Casandra, Broadway Girls, I, Mirage, Duet, Taunt, Togetherness* and *Photographing the Female Group* may be retained by the defendants. The defendants may also retain the snapshots which were given to the purchaser of *Casandra* on or about the 11th day of March, 1969, allegedly by Mr. Gregory. All other seized materials shall be returned to the premises of the plaintiffs not later than April 28, 1969 at two P.M. by the defendants.

So ordered.