**BETHVIEW AMUSEMENT CORP., George Hall, Ruth Bakey, Clyde Bruce, Tom Cuccarole and Richard Halback, Plaintiffs-Appellees,**

v.

**William CAHN, District Attorney for Nassau County, State of New York, Richard Delin, Chief Assistant District Attorney for Nassau County, State of New York, John Lang, Detective Sergeant, Nassau County Police Department, Defendants-Appellants.**

No. 724, Docket 33799.

United States Court of Appeals
Second Circuit.

Argued July 24, 1969.

Decided Oct. 6, 1969.

---

Morton Alpert, New York City, Alpert & Rosenberg, New York City, for Bethview Amusement Corp.

Jerome S. Rubenstein, New York City, for Tom Cuccarole.

George D. Levine, Asst. Dist. Atty. of Nassau County, Mineola, N. Y. (William Cahn, Dist. Atty. of Nassau County, Mineola, N. Y.), for appellants.

Before WATERMAN and HAYS, Circuit Judges, and BARTELS, District Judge.*

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, directing the return to appellees of a print of a motion picture film entitled "Odd Triangle" seized by police officers under the control of appellants as being obscene. We affirm the order of the district court.

There is no controversy as to the facts. Bethview Amusement Corp. is the owner of a motion picture theater known as Bethview Theater located in Bethpage, Nassau County, New York. On May 6, 1969 the theater was exhibiting a film called "Odd Triangle." Nassau County police officers under the direction of appellants seized the film and arrested the plaintiffs, who were employees of Bethview. The appellees were charged with the crime of "Obscenity" under Section 235.05(1) (2) of the Penal Law of the State of New York, McKinney's Consol.Laws, c. 40. The police officers who seized the film and made the arrests had search and arrest warrants issued on the application of appellants by Judge Marchese of the District Court of Nassau County, who had seen the film before issuing the warrants.

The appellees brought an action in the United States District Court for the Eastern District of New York and in connection therewith sought a preliminary injunction ordering the return of the film. The defendants appeal from the injunction ordering the film's return.

We are not called upon to decide whether the film was in fact obscene. The only issue raised is whether the protection provided by the first amendment required that appellees be given an opportunity to be heard on the issue of obscenity before the film could be seized by the police. We hold that the first amendment as applied to the states by the fourteenth requires an adversary hearing in such a case.

There can be no doubt that a motion picture, like a book, is entitled to the protection of the first amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501–503, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); United States v. A Motion Picture Film, 404 F.2d 196 (2d Cir. 1968). That protection includes the requirement that an adversary hear-

---

* Of the Eastern District of New York, sitting by designation.

ing be provided before the allegedly obscene works can be seized.

"We therefore conclude that in not first affording * * * an adversary hearing, the procedure leading to the seizure order was constitutionally deficient. * * * For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of non obscene books." A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 210–211, 213, 84 S.Ct. 1723, 1726, 12 L.Ed.2d 809 (1964). See also Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967).

Appellants argue that there is a difference between the seizure of a large number of books and the seizure of a single print of a motion picture film. We do not agree that the difference is legally significant. We are told that the Bethview Theater has 300 seats. Assuming half of them to be occupied for four showings of a film each day for a week, over 4000 individuals would see the film. Preventing so large a group in the community from access to a film is no different, in the light of first amendment rights, from preventing a similarly large number of books from being circulated.

We are supported in our view that the rule of the *Kansas* case is equally applicable to seizure of films by the recent decisions of sister circuits in Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968) and Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969). In *Metzger* the court said at p. 204:

"This analysis [of the Supreme Court cases] requires this court to hold unconstitutional the seizure of the film 'I, a Woman' since there must be an adversary hearing on the issue of obscenity before a movie can be constitutionally seized."

The appellants contend that a print of the motion picture is needed for purposes of prosecution. There are a number of ways in which this can be accomplished without seizure of the film. The court can direct that a print be made reasonably available to the prosecution; a subpoena duces tecum can be used.

Finally it is suggested that unless the police or other local authorities have actual possession of the film pending the required adversary proceeding, the distributor may take advantage of the delay, for example, by shipping the film out of the jurisdiction or by cutting out the offending scenes. If there is a real threat of such activity it can be controlled by an ex parte restraining order.

Affirmed.[1]

---

I. The order of the district court prohibited exhibition of the film pending trial of the obscenity charge. Since there was no cross-appeal we express no opinion on this portion of the order.