UNITED STATES of America,
Appellee,

v.

Ferris J. ALEXANDER and Edward J.
Alexander, Appellants.

No. 19757.

United States Court of Appeals,
Eighth Circuit.

May 22, 1970.

Keith D. Kennedy, St. Louis Park, Minn., for appellants; Irving R. Brand, Minneapolis, Minn., on the brief.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

MATTHES, Circuit Judge.

This appeal comes to us from an order of the United States District Court for the District of Minnesota (the Honorable Gunnar H. Nordbye) denying appellants' motion for the suppression of evidence seized pursuant to three search warrants issued and executed on February 8, 1969, in Minneapolis, Minnesota. The materials seized consisted substantially of booklets and films alleged to be obscene under 18 U.S.C. § 1462.[1] Of the six grounds for suppression presented to the district court, three are raised for our consideration: (1) whether under the facts of this case it was necessary for the magistrate to hold an adversary hearing to determine whether the matter was obscene prior to issuing the warrant for its seizure; (2) whether the search warrants were illegally executed by the seizure of property not described therein; (3) whether there was probable cause for the issuance of the search warrants.

No serious disagreement exists as to the relevant facts. Eight footlockers were shipped from New York City to Cloister House Gifts, 8th Floor Edison Building, 417 Hennepin Avenue, Minneapolis, Minnesota. During handling at John F. Kennedy Airport in New York, two lockers were broken open and their contents exposed. Upon examination, the films and booklets contained therein were deemed by the examiner to be obscene. Pursuant to tariff regulations, the remaining six lockers were examined and found to contain similar material. One reel of film in each locker was marked for identification purposes and several of the booklets were initialed. One copy of film and one magazine were forwarded along with information as to the material examined and its destination to agents of the F.B.I. in Minneapolis.

When the shipment arrived in Minneapolis on February 8, 1969, a local F.B.I. agent accompanied its transport to the Edison Building. Later that same day the agent appeared before a United States Commissioner and executed an affidavit reciting all of the above information, listing the titles of the films and magazines contained in the lockers, and reciting further that such articles were being concealed on the eighth floor of the Edison Building, 417 Hennepin Avenue, Minneapolis, Minnesota. A short summary describing the contents of the films and magazines was also included in the affidavit. Attached to the affidavit were the film and magazine which had been forwarded to the Minneapolis agents from New York. After reviewing the affidavit and attached materials in an *ex parte* proceeding, the Commissioner issued a warrant authorizing a search of the eighth floor of the Edison Building. After the first search failed to yield all of the material described in the warrant, two subsequent warrants were issued authorizing the search of the third floor of the Edison Building and the Economy Book Store located in an adjacent building. Affidavits in support of these latter two warrants were, save the last two paragraphs of each, identical to the affidavit in support of the first warrant.

The search of the third floor produced no evidence and is not now in dispute.

---

1. 18 U.S.C. § 1462 prohibits, *inter alia* the receipt from an express company or interstate carrier any book or motion-picture film that is obscene, lewd, lascivious, or filthy.

However, the first and third searches resulted in the seizure of nearly 1,700 reels of 29 different film titles and 266 copies of 8 different magazines and booklets.[2] Only 6 of the 29 film titles seized were described in the warrant.

Appellants immediately moved under Rule 41(e) Fed.R.Crim.P. for the suppression of all material seized. A hearing was held on February 24, 1969, and the motion was denied on April 25, 1969. In denying the motion, the district court found probable cause for the issuance of the warrant and no infirmity in its execution. Under the facts of this case, the court held that a prior adversary hearing was unnecessary. It reasoned that the material seized was obviously hard-core-pornography, handled furtively, and without currency in the daily lives of the American people. In view of these circumstances, a prior adversary hearing would unduly handicap criminal investigation and prosecution and was unnecessary to protect the public's right to free and open access to non-obscene expression.

■ Prior to reaching the substantial questions raised, we first consider whether we have jurisdiction under 28 U.S.C. § 1291, which limits our appellate jurisdiction to appeals from *"final* decisions of the district courts." The crucial consideration in deciding whether an order denying or granting a motion for suppression or return of illegally seized evidence is appealable is whether the motion and order were independent of any criminal proceeding *in esse.* DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Smith v. United States, 377 F.2d 739

(3d Cir. 1967); Selinger v. Bigler, 377 F.2d 542 (9th Cir.), cert. denied, 389 U. S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218 (1967); Goodman v. United States, 369 F.2d 166 (9th Cir. 1966); Gottone v. United States, 345 F.2d 165 (10th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965); United States v. Koenig, 290 F.2d 166 (5th Cir. 1961), aff'd, DiBella v. United States, *supra.*[3] When the order rendered on the motion *is* independent of any criminal prosecution against the movant it is considered "final" within the meaning of § 1291. *Id.*

■ Appellants have been neither arrested nor arraigned. Neither does the record show that they are under indictment or information for the commission of any crime. In short, the order denying their claim for relief from the alleged illegal search and seizure was independent of a criminal prosecution *in esse.* Accordingly, we believe that we have jurisdiction to hear the appeal.

## I. THE ADVERSARY HEARING

We begin our inquiry into this issue by consideration of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (hereinafter *Books*). There, the Kansas Attorney General, pursuant to statute, obtained an order directing seizure of copies of certain books from a local bookstore. The order authorized seizure of 59 titles and prior to its issuance the district judge, in a 45 minute *ex parte* proceeding, viewed seven representative titles of the books to be seized. Acting under the order, the sheriff seized all copies of 31 of the 59 titles—1,715 books. Thereafter a hearing was held and all 31 titles were declared obscene

2. The character of other material obtained in the seizure is not relevant to this appeal.

3. The Government has not challenged our jurisdiction, indeed, at oral argument counsel for the Government conceded we do have the power to entertain this appeal. A literal reading of the *DiBella* decision indicates that the proceeding be solely for the return of the property, as well as being independent of a criminal prosecution. However, such a reading of *DiBella* seems inconsistent with footnote 17 of the *Carroll* opinion, 354 U.S. at 404, 77 S.Ct. 1332, which is cited with approval by *DiBella.* We adhere to the principles enunciated in that note in interpreting the *DiBella* decision.

and all copies were ordered destroyed. Because the procedure authorizing the seizure of the books did not afford the bookseller an adversary hearing on the question of obscenity of the books prior to the issuance of the order, the Court found it to be constitutionally deficient. Referring to Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1961) and Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), the Court reasoned that absent an adversary hearing a substantial threat existed that the right of non-obscene publications to unobstructed circulation would be impinged through the massive seizures of material deemed obscene solely on the basis of an *ex parte* hearing. Nor, because of the fine line between protected and unprotected speech, could the seizures to be saved by applying principles developed for seizure of contraband. And, the fact that an adversary hearing had been held after the seizures and the items seized declared to be obscene did not cure the procedural error in failing to hold the hearing prior to the search.[4]

Recent applications of *Books* to varying factual settings are many and not entirely consistent. In some instances federal district courts have validated searches instituted pursuant to warrants issued without benefit of an adversary hearing on the question of obscenity. In Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La.1969), Chief Judge West reasoned that whether or not such a hearing is required depended upon the nature and purpose of the seizure; if made for the purpose of destroying the thing seized and for the purpose of preventing the dissemination of the articles seized then an adversary hearing prior to seizure is mandated to prevent running afoul of the First Amendment guarantee to the right of freedom of expression. The court concluded, however, that where a single copy of a film is seized for the sole purpose of preserving it for evidence in a criminal action, such a seizure does not violate the First Amendment. *Accord*, Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y. 1969). A second exception has been carved out for materials which are dealt with furtively and which have little currency in our daily lives. In such instances, it is said that the public's right to free access to non-obscene materials is not unduly threatened by the absence of an adversary hearing. Judge Nordbye adopted this rationale. *See also* United States v. Pryba, 312 F.Supp. 466 (D.D.C. April 2, 1970).

Several courts have held, on the basis of Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968),[5] that a prior adversary hearing is unnecessary for the seizure of films, as opposed to books, provided suggested procedural standards are satisfied. *E. g.,* Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 812 (M.D.Ala. 1969); Merritt v. Lewis, 309 F.Supp. 1254 (E.D.Cal.1970). In at least one case *Books* has been narrowly distinguished, United States v. Wild, 422 F.2d 34 (2d Cir. 1970) (denial of rehearing), and in another it has been ignored. McGrew v. City of Jackson, 307 F.Supp. 754 (S.D.Miss.1969).

■ However, our survey of the relevant case law indicates that the bulk of authority supports the principle that there must be an adversary hearing on the question of obscenity prior to the issuance of a warrant authorizing the

4. Four Justices agreed with this holding, one Justice concurred on the ground that the material in question was not "hardcore-pornography," and two Justices concurred on the ground that the statute was unconstitutional and it was therefore unnecessary to reach the procedural question.

5. The Court, in a *per curiam* decision reversed the conviction of a motion picture operator for showing obscene films because films admitted into evidence had been seized pursuant to a warrant issued on the conclusory assertions of a police officer as to the films' obscenity. Reversal was based on Marcus v. Search Warrants, *supra*.

wholesale seizure of allegedly obscene material. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.), cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Morrison v. Wilson, 307 F.Supp. 196 (N.D.Fla.1969); Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969); Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga.1969); Central Agency, Inc. v. Brown, 306 F.Supp. 502 (N.D.Ga.1969); Fontaine v. Dial, 303 F.Supp. 436 (W.D.Tex.1969); Cambist Films, Inc. v. Illinois, 292 F.Supp. 185 (N.D.Ill.1968); United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967); Carter v. Gautier, 305 F.Supp. 1098 (M.D. Ga.1969); Star Satellite, Inc. v. Rosetti (S.D.Miss. February 27, 1970) 6 Cr.L. 2430; Carroll v. City of Orlando, 311 F. Supp. 967 (M.D.Fla.1970); Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967) (dictum); Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969); Miske v. Spicola, 314 F.Supp. 962 (M.D.Fla. December 9, 1969) Civ. No. 69–366; Engstrom v. Robinson (S.D.Ala. October 29, 1969) Civ. No. 5416–69–P.

Despite the existence of the above authority, the Government contends that Books is distinguishable and the procedure here employed is without constitutional infirmity. As well as relying on the cases above discussed which have developed exceptions to the adversary hearing requirement, the Government urges that the following circumstances distinguish this case from Books: (1) the Commissioner who issued the warrants viewed representative copies of the seized material as well as the descriptive affidavits of the officer; (2) the warrants here issued specifically identified the articles to be seized and no discretion remained in the officers who conducted the search as to the question of obscenity; (3) appellants were afforded an opportunity to an expeditious determination of obscenity at the hearing on the motion to suppress; (4) the materials seized herein were obviously "hard-core-pornography" and as such there was no need to hold an adversary hearing prior to the issuance of the warrant; (5) in the circumstances here present the requirement of an adversary hearing prior to the issuance of a warrant would effectively immunize the disseminators of the material from criminal prosecution.

We are impelled to conclude that the distinctions drawn and the cases relied on are either inapplicable to the instant facts or do not stand up under close scrutiny.

Several of the Government's contentions can be disposed of rather summarily. The fact that authorization for the search was obtained from a commissioner who was apprised (in an abbreviated manner) of some of the materials' contents and had allegedly representative samples of the material before him, does not distinguish this case from Books. Indeed, in Books a state judge authorized the search and scrutinized a significantly larger sample of the material seized. Here only two of some 30 different titles were before the Commissioner, and there is substantial question whether either of the two items attached to the affidavit was a copy of material actually seized. Most importantly, however, Books clearly stands for the principle that such procedure alone, will not justify a massive seizure. Nor is the seizure in the instant case saved by the fact that the warrants issued described the material with more particularity than those in Marcus, thus limiting the discretion of the executing officers to judge obscenity.[6] As we understand the relationship between Marcus and Books, the latter adds an additional independent requirement to the former, at

---

6. It is perhaps significant that, despite the Government's contention that the warrants now in issue were drawn in such a manner that the officer's discretion in determining obscenity was adequately limited, more than 1,000 reels of film not mentioned at all in the warrant were seized.

least in the case of a wholesale seizure. Thus, not only must the warrant authorizing the seizure of obscenity comport with the requirements of *Marcus*, but it must be issued only after an adversary hearing. And, just as the subsequent hearing in *Books* (at which, incidentally, the items were found to be obscene) did not cure the failure to hold the prior adversary hearing, neither does the suppression hearing in the instant case.

The additional contentions raised by the Government and the cited cases raise more substantial questions. It is first suggested that where the publications or films are patently obscene or "hard-core-pornography" the *Books* rule is inapposite. Justice Stewart concurred in *Books* on the ground that the literature involved was not "hard-core-pornography." This exception apparently rests on the belief that the line between "hard-core-pornography" and protected speech is much brighter than that between mere obscenity and protected speech.[7] However, nowhere in the majority opinion do we find any suggestion that the ultimate evaluation of the expression in issue is material to the requirement that there be a prior hearing.[8] Significantly, the Court quoted from *Marcus*:

" ' * * * [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. * * * The separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *.' " 378 U.S. at 212, 84 S.Ct. at 1726.

The very purpose of the prior hearing is to provide the sensitive tool for determination of the expression's legitimacy before imposition of substantial restraints. See generally Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga.1969); Central Agency, Inc. v. Brown, 306 F.Supp. 502 (N.D.Ga.1969).

It is also argued that the hearing requirement is not applicable to films. Apart from the merits of the assertion, it is not dispositive of the instant case. Here magazines and booklets, as well as films, were seized. Also, in those cases in which it was held that a literal application of *Books* was not required when films were seized a different type of exhibition and seizure was involved.[9] And we believe it significant that all decisions so limiting *Books* are from district courts. All three Courts of Appeals which have considered *Books*' application to films have held that a prior ad-

---

7. The assumption that there is a consensus among reasonable men as to the identity of "hard-core-pornography," therefore diminishing the danger of suppressing protected speech, may be questioned. We note that one federal district court in Mississippi found the film "The Fox" to be not obscene, while another federal district court in that state thought the film to be "hard-core-pornography." *Compare* Camise v. Douglas, N.D.Miss. December 3, 1968, No. EC 6872–K, with McGrew v. City of Jackson, *supra*. We are led to assume that even more disagreement would arise among police officers and magistrates *as to* what constitutes "hard-core-pornography," when the decision is made without benefit of an adversary hearing. Such uncertainty can only lead to the suppression of protected speech.

8. As we have already recognized all of the titles seized in *Books* were found to be obscene in the hearing held several weeks after the date of seizure. The Court considered this fact to be irrelevant to the issue of whether the failure to hold an adversary hearing prior to the seizure represented a violation of the booksellers' constitutional rights.

9. Such cases involved the seizure of a film from a motion picture theatre. Moreover, under the procedural safeguards set up by two courts to take the place of a prior adversary hearing, it is questionable whether the instant search would be valid. *See* Merritt v. Lewis, 309 F.Supp. 1254 (E.D.Cal.1969); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D. Ala.1969).

versary hearing is required. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). In view of the preceding discussion, we decline to validate the seizure of the films here in question on the ground that an adversary hearing is not required for films.

Lastly, we consider the contention that in instances where the material is not in general distribution to the public and is dealt with secretively and surreptitiously the Books rationale is inappropriate. This theory is perhaps best articulated in the recent decision of United States v. Pryba, 312 F.Supp. 466 (D. D. C. 1970). As in the instant case, obscene films were discovered by shipping agents. A warrant was issued without an adversary hearing. Thirty reels of film were found hidden in the ceiling of the store described in the warrant. In denying suppression, the court observed that the seizure was not massive, and that the character of the films and the manner in which they were handled indicated that they were not intended for public display or display to a significant number of persons. Under these circumstances, the court reasoned that the public interest in free access to non-obscene materials was not sufficiently

threatened to justify the impractical[10] requirement of a prior adversary hearing. Judge Nordbye relied on a similar analysis.

The final contention of the Government is not without merit. Quite clearly, in our view, the procedure required by Books was intended to protect the constitutional right to free and full dissemination of non-obscene expression. Of course, where there is no intent to disseminate the speech, or where the dissemination is limited in scope,[11] a smaller segment of the public will be deprived of any non-obscene material during the period of time between the seizure and the subsequent suppression hearing. However, to afford First Amendment procedural protections only to speech directed to a large segment of the public, or speech which has "currency in the daily lives of the American people," is to ignore the purpose of, and experience under, that Amendment. History teaches us that the First Amendment has generally been judicially invoked to protect the speech of small and unpopular minorities. Ideas which have "currency" are rarely ideas which are the objects of official suppression. Nor are we persuaded that the manner in which the material is disseminated forms a rational basis for limiting the procedural safeguards embodied in the Books rule.[12]

10. The court argued that under the circumstances it was unlikely that, after having been given notice, the owners of the film would retain them at all, or at least in their original form. It also believed that a restraining order would be ineffective under the circumstances.

11. We have some difficulty in distinguishing between the instant case and Books with respect to the scope of dissemination involved. If Books constituted a massive seizure, clearly so did the instant case. And in terms of the number of people affected by the seizure it can be argued that more people would be deprived of non-obscene speech since films were seized here and they are viewed by a larger audience than a single copy of a book. The Pryba decision seems to suggest that the material there seized was in the

private domain as opposed to the public domain. As we have just indicated the material here seized was not, we believe, intended purely for private use by the persons from whom it was seized. However, to the extent that Pryba draws a distinction between private and public in applying Books, it is on questionable ground. It has been held that admittedly obscene material possessed solely for private use is not subject to state regulation. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

12. Unpopular protected expression, as well as obscene expression, is not infrequently circulated through channels of communication not employed by expression enjoying more favor with our society.

**1176**

It is frequently suggested, and the Government so argues, that dealers in obscenity will be effectively immunized from prosecution if a prior adversary hearing is required in cases such as this. Several courts have faced this contention, and have demonstrated that a number of methods for the securing of evidence remain available to prosecutors. See, *e. g.,* Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga. 1969); Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969). *See also* Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). We believe these cases answer the Government's concern.

■■ In view of the above discussion, it is manifest that the wholesale seizure of films, magazines and booklets prior to holding an adversary hearing on their obscenity was violative of appellants' constitutional rights. It follows that on remand, the district court shall enter an order requiring the materials seized to be returned. However, we also adopt the teachings of the Seventh Circuit in Metzger v. Pearcy, 393 F.2d 202 (1968), and the Fourth Circuit in Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (1969), and hold that the order for return shall be without prejudice to the district court to compel appellants to deliver, on request of the United States Attorney for the District of Minnesota, one copy of each of the titles described in the warrants for use in connection with any criminal prosecution initiated by the Government.

In view of our holding on the issue of the prior adversary hearing we pretermit consideration of other issues raised by appellants. The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.