**GREENMOUNT SALES, INCORPO-RATED et al.**

v.

**J. R. DAVILA, Jr., etc., et al.**

**Civ. A. No. 655-70-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 3, 1972.

Joseph S. Bambacus, Richmond, Va., Richard R. Ryder, Richmond, Va., for plaintiffs.

Anthony F. Troy, James E. Kulp, Asst. Attys. Gen., Richmond, Va., for defendant Davila.

Conard B. Mattox, Jr., City Atty., Daniel T. Balfour, Asst. City Atty., Richmond, Va., for defendant Duling.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Greenmount Sales, Incorporated, seeks injunctive relief prohibiting seizure by defendants of allegedly obscene items from their retail book store without a prior adversary hearing, as well as against the initiation of prosecutions against it based on certain items heretofore seized by the defendants.[1] In addition, the corporate plaintiff seeks an order requiring defendants to return items seized in a police raid on its book store and an order suppressing the use of items seized in any pending or future state prosecution. The individual plaintiff seeks injunctive relief against his further prosecution based on an arrest warrant issued as a consequence of a po-

---

1. Plaintiff's request for a preliminary injunction against interference or seizure by defendants during the pendency of this action was mooted by agreement of the parties.

lice raid, and in addition he seeks a declaratory judgment that a search warrant executed in support of the police raid was void under the Fourth Amendment to the Constitution of the United States. Jurisdiction is properly invoked pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and (4).

Greenmount Sales, Incorporated, is a Delaware corporation, authorized to do business in Virginia, and operates a retail store known as Variety Book Store located in Richmond, Virginia. Plaintiff Little is a resident of Richmond, Virginia, and was at the critical time involved herein the manager of Variety Book Store. Defendant Davila was and is the Commonwealth's Attorney for the City of Richmond, Virginia, and the defendant Duling was at the time Acting Director of Safety for the City of Richmond.

A plenary hearing was conducted and the Court finds as follows:

On August 19, 1970, the members of the Richmond Police Department, acting with the advice of the Commonwealth's Attorney's Office, obtained search warrants to search three so called adult book stores in Richmond, Virginia, including Variety Book Store, for obscene items. At 10:00 a. m. on that day the police simultaneously raided the three establishments. Officers entered the Variety Book Store at that time, browsed around briefly, and purchased an item from Harlee Little. They then placed him under arrest for selling obscene articles, in contravention of Code of Virginia § 18.-1-228 (Supp.1970), and served a search warrant on him.

Approximately six to eight customers were then in the store and were, under threat of arrest, immediately ordered to leave, and Little was ordered to lock the door to the premises. The officers then roamed through the store inspecting items, in some cases breaking open wrapped packages of books belonging to customers. In the words of Officer Boschem, one of the officers who conducted the raid, they went looking for material depicting "abnormal sex relationships, sadism and homosexuality." Most of the materials taken were illustrated publications and were judged on the basis of photographs contained therein. All film in the store was seized except that which was in stationary viewing machines. The avowed purpose of the seizures was to obtain evidence for criminal prosecution of the plaintiffs. Police seized 201 publications, 11 reels of motion picture film, and 140 other miscellaneous sex oriented items, the total valued at approximately $2,400.00.[2]

Although in the store approximately an hour, the officers neither read the publications seized or viewed the films, most of which were individually packaged so that only an outside picture or cover could be seen. None of the police officers were acquainted with either the publications or the films prior to the date of the raid.

While there was not sufficient evidence adduced to establish whether any pictures for use on television were taken, or taken and used by the news media, the evidence does disclose that at one point a television cameraman was permitted to enter the store.

The issues are reasonably concise: (1) should the defendants be enjoined from seizing or interfering with allegedly obscene publications and film without holding a prior adversary hearing as to their obscenity?; (2) should pending and future state criminal prosecutions against the plaintiffs be enjoined?; (3) should the defendants be ordered to return the seized publications and film?

I.

◼ The Supreme Court in Quantity of Books v. Kansas, 378 U.S. 205, 84 S. Ct. 1723, 12 L.Ed.2d 809 (1964), estab-

---

2. Among the 201 publications, including books and newspapers, there were 23 duplicate copies, 18 of which were returned to Variety by the defendants on January 28, 1971. The remaining 183 publications are single copies.

lished the doctrine that the First Amendment compels that a prior adversary judicial hearing be conducted before allegedly obscene books can be seized by government authorities. This doctrine has been reinforced and expanded by circuit courts across the country,[3] including the Circuit Court of Appeals whose opinions are binding on this Court, which held in Tyrone v. Wilkinson, 410 F.2d 639 (4th Cir.1969), that movie films are to be accorded the same constitutional protection. The seizure of publications and film here in question, admittedly conducted without a prior adversary hearing, clearly falls within the ambit of *Books* and necessarily violates its mandate.

The defendants urge the Court to except this particular seizure from the requirement of a prior adversary hearing because it was neither massive, in the *Books* sense, nor a seizure of a movie theater's only film. They also advance the argument that seizures such as this one, made pursuant to a search warrant in connection with an arrest warrant and for the purpose of obtaining evidence for a criminal prosecution, are not subject to the *Books* doctrine. For these contentions they cite United States v. Wild, 422 F.2d 34 (2d Cir.1969), reh. denied, 422 F.2d 38 (2d Cir.1970), cert. denied 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971), reh. denied 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720 (1971); Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La.1969); and Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y. 1969).[4]

The magnitude of a particular seizure is not a viable determinant of whether a person's or society's right to freedom of speech and press has been abridged. First Amendment rights are infringed whether one book, a page of one book, or 1,715 books are wrongfully seized—the chilling effect on free speech does not vary numerically. The Eighth Circuit Court of Appeals in United States v. Alexander, 428 F.2d 1169 (8th Cir.1970), in this Court's opinion, correctly rejected the reasoning of *Wild*, *Bazzell* and *Leary*:

> Quite clearly, in our view, the procedure required by *Books* was intended to protect the constitutional right to free and full dissemination of non-obscene expression. Of course, where there is no intent to disseminate the speech, or where the dissemination is limited in scope, a smaller segment of the public will be deprived of any non-obscene material during the period of time between the seizure and the subsequent suppression hearing. However, to afford First Amendment procedural protections only to speech directed to a large segment of the public, or speech which has "currency in the daily lives of the American

---

3. *2d Circuit*: Astro-Cinema Corp., Inc. v. Mackell, 422 F.2d 293 (2d Cir. 1970); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970). *3d Circuit*: Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3d Cir. 1969). *4th Circuit*: Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), cert. denied 396 U.S. 985, 90 S.Ct. 477, 478, 24 L.Ed.2d 449 (1969). *7th Circuit*: Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). *8th Circuit*: United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970); Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970). *9th Circuit*: Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970), vacated on other grounds, 401

U.S. 990, 91 S.Ct. 1223, 28 L.Ed.2d 528 (1971).

4. *See also*, United States v. Fragus, 428 F.2d 1211 (5th Cir. 1970); Miller v. United States, 431 F.2d 655 (9th Cir. 1970); United States v. Green, 284 A.2d 879 (D.C.Ct.App., decided Dec. 20, 1971); Huffman v. United States, Pryba v. United States, Nos. 23781–82 (D.C.Cir., decided Oct. 7, 1971); United States v. Gower, 316 F.Supp. 1390 (D.D.C.1970); Aalto v. Gerstein, 320 F.Supp. 652 (S.D. Fla.1970); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y. 1969), aff'd. without opinion sub nom.; New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970).

people," is to ignore the purpose of, and experience under, that Amendment. History teaches us that the First Amendment has generally been judicially invoked to protect the speech of small and unpopular minorities. Ideas which have "currency" are rarely ideas which are the objects of official suppression. Nor are we persuaded that the manner in which the material is disseminated forms a rational basis for limiting the procedural safeguards embodied in the *Books* rule.

United States v. Alexander, *supra*, at 1175.

■■■ No distinction can rationally be made between the seizure of publications and film for condemnation, and seizure for evidence in a criminal prosecution. Both types of seizure must be treated the same under *Books*, for to do otherwise would sanction indiscriminate police fishing expeditions, such as the one here before this Court, to occur. The prevention of the chilling effect inherent in any interference with speech is of such importance to our democracy that the government must first ascertain in an adversary judicial proceeding that a particular speech falls outside the protection of the Constitution before any interference will be tolerated.[5] Con-

gruently, a person may not be forced to go through the hardship of defending himself against a criminal prosecution —with its consequent chilling effect on him and the community at large—for possessing, selling, or promoting, etc., publications of film without the government first having judicially ascertained whether the matter for the possession, etc., of which he is being prosecuted is, in fact, obscene. The argument often raised by government authorities that prior adversary hearings will hamper the gathering of evidence for use in obscenity prosecutions has been convincingly dismissed by *Alexander* and other *Books* cases:

It is frequently suggested, and the Government so argues, that dealers in obscenity will be effectively immunized from prosecution if a prior adversary hearing is required in cases such as this. Several courts have faced this contention, and have demonstrated that a number of methods for the securing of evidence remain available to prosecutors. See, *e.g.*, Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga.1969); Greg-

5. The current judicial delineation of the obscenity exception to the First Amendment is found, *inter alia*, in the following cases: Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). This Court has come to the conclusion that the convoluted and oft-conflicting doctrines of obscenity, as applied and misapplied by courts in this country, have failed to give the American people any guidance as to what is and is not proscribed speech. See, *e. g.*, Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972); Redrup v. New York, 386 U.S. 767, 87 S.

Ct. 1414, 18 L.Ed.2d 515 (1966); and Huffman v. United States, Pryba v. United States, Nos. 23781–82 (D.C.Cir. decided Oct. 7, 1971). This uncertainty is a specific example of why our founding fathers wrote and adopted the First Amendment. Thus, the time has come for judges in this country to give full breadth to the teachings of Justice Douglas and the late Justice Black: "The *First Amendment forbids any kind or type or nature of governmental censorship over views as distinguished from conduct.*" A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, *supra* and Ginzburg v. United States, *supra*, 383 U.S. at 424, 476, 482, 86 S.Ct. at 980, 950, 953 (dissenting opinion of Justices Black and Douglas). See also, Final Report of the President's Commission on Obscenity and Pornography, September 30, 1970.

ory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969). See also, Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). We believe these cases answer the Government's concern. United States v. Alexander, *supra*, 428 F.2d at 1176.

■■ Defendants must therefore be enjoined from interfering with or seizing any publications or film for any purpose from the Variety Book Store without those materials having been declared obscene at an adversary judicial hearing.[6] Since the 140 "articles" also seized are not subject to first amendment protection, they are, of course, not subject to this injunction,[7] and the complaint with regard to them will be dismissed.

## II.

■ Plaintiff Little has asked the Court to enjoin the State from any further prosecution of him pursuant to an arrest warrant for selling obscene items served during the raid and an order declaring the search warrant of August 19, 1970, void as a general warrant in contravention of the First Amendment. Greenmount Sales seeks an injunction from any future prosecution against it based on the seized materials. Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), has imposed heavy burdens of proof on plaintiffs seeking to persuade federal courts to enjoin or impede state criminal proceedings. A plaintiff must show irreparable injury and that the prosecution was brought in bad faith or for harassment. The Supreme Court has recently further clarified these criteria in the *Younger* cases.[8] In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), it was established that the chilling effect and aggravation inherent in a good faith prosecution under a state obscenity statute is not irreparable injury sufficient to enjoin state criminal proceedings under the *Dombrowski* standard. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), expounding on *Younger*, held that the same reasoning prohibits a federal court from ordering the suppression of evidence in a state criminal trial, and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), says the same principles govern the issuance of federal declaratory judgments concerning state criminal proceedings in progress. In Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), the Supreme Court vitiated a three-judge District Court's injunction against future prosecution of the plaintiffs under a statute the District Court ruled to be unconstitutional. The Supreme Court there decided that the interference by federal courts with state law enforcement could not be based on "speculation about the future," since no criminal prosecutions had been initiated or threatened. *Id.*, at 80–81, 91 S.Ct. 758.

■ The plaintiffs here have attempted to show bad faith and harassment. They argue that the "gangbuster" raid was not made for the purpose of obtaining evidence for a good-faith prosecution, but to effectively discourage book dealers in the area from carrying certain kinds of explicit sex-oriented publications, films and items, and to secure media coverage for the alleged political purposes of the defendants. The evidence shows that several months before the raid, an attorney for Greenmount Sales, Inc., met separately, on different occasions, with the chief prosecu-

6. Detailed procedures for conducting an adversary hearing as to the obscenity of books are spelled out in Code of Virginia § 18.1–236.3 (Supp.1970).

7. Tyrone v. Wilkinson, 294 F.Supp. 1330, 1333 (E.D.Va.1969) ; Metzger v. Pearcy, 393 F.2d 202, 203 (7th Cir. 1968).

8. For an excellent treatment of the significance of these cases generally, and with regard to the First Amendment vagueness over-breadth doctrine, see Judge Goldberg's opinion in Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971).

tor, one of his assistants, and the Chief of the Vice Division of the Police Department. He offered to provide each of them with any book they desired from Variety Book Store, and to stipulate that it was offered for sale there. He requested as *quid pro quo* that the police not make any "gangbuster" raids on the store. However, no agreement was ever reached in this regard. It would be appropriate to point out that, as immaterial as it may have been, there was no evidence to indicate the police raids were made with a view of enhancing the alleged political purposes of the defendants.

While this Court does not condone the procedures used by the Police Department in its raid on Variety Book Store, it cannot find that this single raid, the arrest of Harlee Little, and the seizure of items from the store, and the circumstances surrounding them, amount to the bad faith or harassment required by *Dombrowski*. The raid, arrest and seizure of publications and film from Variety Book Store were more the result of gross insensitivity to First Amendment safeguards than of a deliberate attempt to thwart them. The question is reasonably close. However, the principles of equity, comity and federalism are in this instance sufficient when weighed against the evidence adduced to preclude this Court enjoining the state court proceedings. The constitutional validity of the search warrant can be determined as well by the state court as by this Court. Accordingly, consistent with the principles enunciated in Younger v. Harris, *supra*; Samuels v. Mackell, *supra*; and Boyle v. Landry, *supra*, the injunctive relief sought by plaintiff Little and the corporate plaintiff as to future prosecution must be denied.

### III.

■ Greenmount's request for a return of all items seized from Variety Book Store on August 19, 1970, is granted, except as to the 140 items which are neither publications or film. *See* I., *supra*, and cf. Wilhelm v. Turner, 431 F.2d 177, 180 (8th Cir. 1970). In order to avoid interfering with pending state criminal proceedings, plaintiff corporation shall deliver to the Commonwealth's Attorney upon request a copy of any book or books or film heretofore seized, for reasonable use in the preparation and trial of the charges now pending in the state court. The Commonwealth's Attorney's attention is directed to the *sui generis* nature of this relief.

An order in conformance with this memorandum will be entered.