GARLAND PAT BULLARD *v.* STATE OF ARKANSAS

5705                                                  481 S.W. 2d 363

Opinion delivered June 12, 1972

*Arnold & Arnold,* and *Frierson M. Graves, Memphis, Tenn.,* for appellant.

*Ray Thornton,* Attorney General; *Fred H. Harrison,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH Justice. An assertedly obscene

motion picture, "The Affairs of Aphrodite," was shown sixteen time during one week in August, 1971, at the Capri Theater in Texarkana, Arkansas. The appellant, who was the theater's manager and projectionist, was arrested and charged with having shown an obscene film. Upon trial by jury Bullard was found guilty and was sentenced to a fine of $2,000 and to imprisonment for 18 months, with the latter part of the sentence being suspended during good behavior. Bullard's contentions for reversal involve almost every aspect of the case, from the validity of the charge to the accuracy of the court's instructions to the jury.

The appellant makes two contentions which, if sustained, would result in a reversal of the judgment and a dismissal of the charge. We consider those points first, for if either one has merit all the other contentions become immaterial.

The appellant first questions the constitutionality of our statute prohibiting the showing of obscene films. Ark. Stat. Ann. § 41-2729 *et seq.* (Supp. 1971). The argument is that the statute is invalid because its definition of "obscene," as set forth in § 41-2730, does not expressly state the three necessary elements of obscenity that have been recognized by the Supreme Court. *Memoirs* v. *Massachusetts*, 383 U.S. 413, 418 (1966); *Roth* v. *United States*, 354 U.S. 476 (1957). Specifically it is insisted that the statute is fatally deficient in failing to declare that obscene films must be "utterly without redeeming social value." *Memoirs, supra.*

The decision of a three-judge court in *Shinall* v. *Worrell*, 319 F. Supp. 485 (E.D. N.C. 1970), is cited to support this contention. There, however, the federal court contrasted its inability to go beyond the strict letter of a state statute with the broader powers exercised by a state court in the interpretation of its own laws. We agree with the Illinois Supreme Court's conclusion that a measure such as the Arkansas statute is not constitutionally deficient, for it is not essential that the act "incorporate every nuance of constitutional dictum." *City of Blue Isalnd* v. *DeVilbiss*, 41 Ill. 2d 135, 242 N.E. 2d 761 (1969). See also *Entertainment Ventures* v. *Brewer*, 306 F. Supp. 802 (M.D.

Ala. 1969); *Cambist Films* v. *Tribell,* 293 F. Supp. 407 (E.D. Ky. 1968); and *Grove Press* v. *Evans,* 306 F. Supp. 1084 (E.D. Va. 1969). We are of the opinion that our statutory definition of "obscene" is sufficiently fair and comprehensive to meet the test of constitutionality. That same conclusion was reached with respect to our statute by a three-judge federal court in *United Artists Theater Circuit* v. *Thompson,* 316 F. Supp. 815 (W.D. Ark. 1970).

The appellant next argues that the prosecution should be dismissed because, it is contended, "The Affairs of Aphordite" is not an obscene film, as a matter of law. Here we think the issue plainly to be one of fact. According to the proof the film contains a succession of scenes in which acts of sexual intercourse are shown without reservation or inhibition. All the intimate parts of both men and women are displayed. It was the opinion of four witnesses for the State that the film is obscene. We certainly cannot say as a matter of law that the motion picture in question lacks obscenity.

Bullard also contends that the State's case was fatally deficient, in that it was not explicitly proved that Bullard himself knew the actual content of the film that was being shown. The State proved, however, that Bullard was the manager and projectionist at the theater, which had only one other employee, and that the film was shown a total of sixteen times during the week that ended with Bullard's arrest. That proof amply satisfied the State's burden of establishing a prima facie case of scienter on Bullard's part.

The appellant is correct in his contention that the trial court erred in refusing to suppress as evidence the copy of the film, The Affairs of Aphrodite, that was seized by Constable Paul Jewell when he arrested Bullard. Jewell attended the theater and saw the film on Monday. On Saturday night he returned to the theater and arrested Bullard after the final showing for the week. At the time of the arrest Constable Jewell took possession of the film, which was shown to the jury at the trial. Before the trial Bullard's motion to suppress the film as evidence was overruled.

In recent years the Supreme Court has developed the rule that an allegedly obscene book or film cannot, consistently with the guaranties of the First Amendment, be seized by a police officer without a preliminary adversary hearing at which the obscene quality of the book or film is independently determined by a judicial officer. *Lee Art Theater* v. *Virginis,* 392 U.S. 636 (1968); *A Quantity of Copies of Books* v. *Kansas,* 378 U.S. 205 (1964); *Marcus* v. *Search Warrant,* 367 U.S. 717 (1961). The court reasoned in *Marcus* that there is a difference between the seizure of ordinary contraband, such as gambling paraphernalia, and matter, such as books, that may (if not obscene) be protected by the First Amendment. That constitutional difference requires that a judicial finding of obscenity, after an adversary hearing, precede the seizure.

Since the case must be retried we point out that the rule in question does not mean that no copy of the film can be used as evidence at the trial, as might be the case, for example, if an alleged murder weapon had been illegally seized without a search warrant. The rule involved in the case at bar goes no farther than the reason for its existence, which is to safeguard the public's right of access to matter protected by the First Amendment. Consequently the federal courts, in developing the practical application of the rule, have not hesitated to point out that the prosecution may obtain copies of the challenged book or film for use at the trial, and that the accused may be prevented by appropriate order from destroying the suspect material or shipping it out of the jurisdiction. *Demich* v. *Ferdon,* 426 F. 2d 643 (9th Cir., 1970), judgment vacated upon another ground, 401 U.S. 990 (1971); *Bethview Amusement Corp.* v. *Cahn,* 416 F. 2d 410 (2d Cir., 1969), cert. den. 397 U.S. 920 (1970).

Upon another point of evidence the appellant insists (a) that the State should have been required to prove by expert testimony that the film was in fact obscene and (b) that lay testimony to that effect is not admissible. There is authority on both sides of the question, but we prefer the view that expert testimony is not essential and that lay testimony may suffice. *People* v. *Pinkus,* 256 Cal. App. 2d Supp. 941, 63 Cal. Rptr. 680 (1967); *State* v. *Childs,* 252

Ore. 91, 447 P. 2d 304 (1968), cert. den. 394 U.S. 931 (1969).

We are actually not convinced that there is any such person as an expert on obscenity. The field is not a professional one, such as medicine or engineering, where expert testimony is readily available. Here the defendant offered as experts on obscenity two professors of English at the University of Arkansas. They were doubtless more familiar than the average person with avant-garde literature and art, but that fact certainly does not demonstrate that they are better able than lay witnesses to describe for the jury what is considered to be obscene in a community such as Texarkana. We therefore hold that lay testimony on the subject is admissible and that expert testimony is not indispensable.

Finally, the appellant questions the accuracy of the trial court's instructions to the jury. With respect to the standard that is to be followed in the determination of what is obscene, we adhere to our previous holding that a national standard is not necessarily controlling. *Gent v. State*, 239 Ark. 474, 393 S.W. 2d 219 (1965), reversed on other grounds *sub nom. Redrup* v. *New York*, 386 U.S. 767 (1967). We do agree, however, that the court erred in not including all three elements of the Supreme Court's definition of obscenity in its instructions to the jury, for without such an instruction the defendant is deprived of his right to argue to the jury that the film is not obscene because, for example, it is not utterly without redeeming social value.

Reversed and remanded for a new trial.