Vernal C. **MELTON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17183.

Court of Criminal Appeals of Oklahoma.

June 20, 1973.

On Rehearing Oct. 24, 1973.

Ronald C. Bennett, Tulsa, Kenneth N. McKinney, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF–71–1432, appellant, Vernal C. Melton, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Exhibiting Obscene Movies. His punishment was fixed at one (1) year imprisonment in the County Jail and he was assessed a one thousand dollar ($1,000) fine. From that judgment and sentence, a timely appeal has been perfected to this Court.

The facts revealed on June 19, 1971, the defendant, owner of the Sooner Theater, Oklahoma City, Oklahoma, displayed the movie entitled "Touch Me." On that date, two Oklahoma City Police Officers viewed three-fourths of the film, arrested the defendant, and seized the film. Out of this transaction, the defendant was originally charged with a felony and upon the defendant's motion, the Information was amended charging the offense under authority of 21 O.S.1971, § 1040.8, reducing the charge to a misdemeanor.

Before deciding the issues raised in counsel's brief, we note the defense does not argue the content of the film "Touch Me" is not obscene. From the record and film, this Court has determined the film "Touch Me" is hard core pornography with it unnecessary to elaborate on its content.

The defense in its first proposition submits two assignments of error. First, he suggests the seizure of the film was unlawful as the officers who viewed the film did not view the film in its entirety. Second, he argues the absence of an adversary hearing and judicial determination of obscenity prior to the seizure of the film resulted in the film being taken as evidence contrary to law invoking the exclusionary rule and rendering the evidence inadmissible.

In the case at bench, noting the above mentioned activities portrayed in the film

and this Court's conclusion the film to be hard core pornography, this Court finds the fact the officers did not view the film in its entirety did not render the evidence inadmissible in the instant prosecution. The acts displayed were not simulated acts, but graphic portrayals of sexual intercourse, sodomy, and other unnatural sex acts. These acts were viewed in the portion of the film observed by the officers. This Court is of the opinion the remaining portion of the film could not redeem those acts observed by the officers as the portion of the film reviewed was sufficient to constitute a crime committed in his presence. Although it goes without saying the better practice in circumstances such as the instant case would be to view the film in its entirety, the officers' viewing of approximately three-fourths of the film, in light of its content, did not render the evidence inadmissible in this prosecution.

In support of defendant's second contention; that a prior adversary hearing with a judicial determination of whether or not the film was an obscene film is a mandatory prerequisite to a seizure of a film alleged to be in violation of the obscenity laws, several lower federal court decisions are submitted. In substance these decisions hold that obscene material seized in connection with state arrests and prosecutions which do not involve a preliminary determination of their obscenity will be suppressed as evidence in such pending prosecutions. The rationale in these decisions is predicated upon the U. S. Supreme Court decisions of Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1127 (1961), and A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). It is this Court's opinion the lower federal decisions are unjustified extensions of *Marcus,* supra, and *Books,* supra, and we decline to follow them as we find them conflicting with decisions of the Supreme Court.

In the case of Times Film Corporation v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) the United States Supreme Court held censorship of obscene matter is not per se unconstitutional. In clarification of this rule in Freedman v. Maryland, 380 U.S. 51, 85 S. Ct. 734, 13 L.Ed.2d 649 (1965) the court stated as follows in clarification of *Times Film,* supra:

"The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech. Unlike a prosecution for obscenity, a censorship proceeding puts the initial burden on the exhibitor or distributor. Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court —part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final."

In light of *Freedman,* supra, and the remedy made available in *Marcus,* supra, and *Books,* supra, we find the case at bench clearly distinguishable from the rule imposed in *Marcus,* supra, and *Books,* supra, and the request of an adversary hearing not applicable to this criminal prosecution. The burden of proving the matter obscene in a criminal prosecution is clearly upon the State. Thus, the procedure in a criminal prosecution is clearly distinguishable from the statutory provisions and procedures held invalid in *Marcus,* supra, and *Books,* supra, as those procedures in effect place the burden upon the proprietor who distributed the matter to prove them not to be obscene. Further, the remedy imposed in *Marcus,* supra, and *Books,* supra, was a return of the materials to the shelves for sale. In the instant case a return is not requested as the defense is requesting suppression of the evidence for a collateral civil procedural violation. Finally, the rationale in *Marcus,* supra, and *Books,* supra, is predicated upon a first amendment violation personal to the general public. It in no way touchs upon the application to de-

fendant's fourth amendment right as defendant's fourth amendment rights are the rights in issue. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1966). The defendant has no standing to invoke a possible violation of the public's first amendment right as it is not personal to him. He must look to the fourth amendment protections which are personally his. Consequently, as in all criminal proceedings, the seizure of evidence of a crime, including crimes involving obscenity, presents primarily a fourth amendment problem rather than a first amendment problem. The fourth amendment provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In the case at bench the seizure was pursuant to an arrest without a warrant. The contention of defendant that the arrest is invalid has been previously resolved as a valid arrest. The offense was committed in the presence of the police officers, the evidence seized was obviously in their view. There is no constitutional requirement an arrest for a violation of obscenity laws be conducted in a different manner than other offenses. The due process requirements are the same in each instance.

Title 22 O.S.1971, § 196, the authority for an arrest without a warrant, states as follows:

"Arrest without warrant by officer. A. peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

The seizure of the above materials was justified under Section 1 of the above statute. Only so much of obscene material taken for preservation of evidence for prosecution was seized. The seizure was reasonably designed to preserve evidence and affect the above purpose in compliance with Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and the seizure did not violate defendant's fourth amendment right which protects him against unreasonable searches and seizures. The seizure was reasonable in the case at bench.

We, therefore, find the defendant's first proposition to be without merit. To not permit an obscenity prosecution to be initiated by a police officer upon viewing a questionable movie would render enforcement of the criminal laws applicable to exhibiting obscene movies completely unenforceable. Movie film is of such a character that it could be easily altered after notice of an adversary hearing as served upon the proprietor of the theater, and prior to the hearing upon the movies content. Therefore, to require an adversary hearing would completely stifle prosecution under this section of the criminal code. For this additional reason we determine it was not the intent of the Supreme Court in *Marcus,* supra, and *Books,* supra, to require a prior adversary hearing in a criminal prosecution of this nature.

In defense counsel's second propositio it is submitted the obscenity definitio in 21 O.S.1971, § 1040.12, is unconstitutional. In the case of Cherokee News & Arcade, Inc. v. State, Okl.Cr., 509 P.2d 917 (1973), the Court stated as follows:

"As noted the Oklahoma Statutes considered here define 'obscene' using almost

the identical language of the Roth decision. 21 O.S.1971 § 1040.12 and § 1040.-9. It is true that the statutes do not mention the 'social value' element or specify that the contemporary community standard is a 'national' standard. However, the mere absence of such further detailment of the obscenity test in the statute does not render it unconstitutional since the crucial factor is whether the appropriate standard is employed in deciding a particular case."

In studying the court's Instructions, we note that all elements of the Roth test were submitted to the jury. Consequently, the appropriate standard was employed in deciding this case. Therefore, we find this proposition to be without merit.

The judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting):

I respectfully dissent. In my view the majority opinion evades the requirements of the First Amendment as interpreted by the United States Supreme Court.

While the State may prevent the distribution and exhibition of obscene matter, Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Fourteenth Amendment requires that regulation of obscenity by the State conform to the procedures that will insure against the curtailment of constitutionally protected expression. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the United States Supreme Court held that the seizure under warrant of allegedly obscene publications violated due process of law, essentially "because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity." 367 U.S. at 732, 81 S.Ct. at 1716. The court found this was an impermissible

prior restraint violative of the First Amendment since there was not "a reasonable likelihood that nonobscene publications, entitled constitutional protection, will reach the public." 367 U.S. at 736, 81 S.Ct. at 1719.

In Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the United States Supreme Court reversed a conviction for exhibiting obscene motion pictures because the seizure of the films violated constitutional requirements. The films in question were seized under authority of a warrant issued by a justice of the peace on the basis of an affidavit of a police officer who viewed the full film. The affidavit for the warrant stated the titles of the motion pictures and that the officer had determined from personal observation of them and of the billboard in front of the theatre that the films were obscene. The court held:

"The admission of the films in evidence requires reversal of petitioner's conviction . . . The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity' [Marcus v. Search Warrants, 367 U.S.] at 732, 81 S.Ct. at 1716, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." 392 U.S. at 637, 88 S.Ct. at 2104.

It is apparent that the film in the instant case was seized without any procedure designed to focus searchingly on the question of obscenity. Since it was so seized, defendant's conviction violated the First Amendment and should be reversed under the rule of Lee Art Theatre.

It would seem apparent that mere satisfaction of the Fourth Amendment's search and seizure requirements is not sufficient when the items seized are books and films

within the protection of the First Amendment. In Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968), the court held that the police could not seize films as evidence of a pending obscenity prosecution without a prior adversary hearing. In so holding, the court said:

"The lesson of *Books* [378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964)] is that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity. Such a seizure violates the First Amendment to the Constitution of the United States, and is a prior restraint condemned by the Supreme Court. In light of Burstyn [v. Wilson 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1962)] supra, Kingsley Pictures, [360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512], supra and Jacobellis, [378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793] supra these rules apply to motion pictures as well. *Allegedly obscene publications or movies are not to be treated the same way as narcotics, gambling paraphernalia and other contraband.*" 393 F.2d at 204. (Emphasis ours)

In Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), the court held that the seizure of a motion picture film by police pursuant to a warrant was improper. After noting the possible viewing audience of a motion picture film, the court stated:

"Preventing so large a group in the community from access to a film is no different, in the light of first amendment rights, from preventing a similarly large number of books from being circulated." 416 F.2d at 412.

In Glass v. District Court, 486 P.2d 1180 (Nev.1971), the Nevada Supreme Court held that a film seized without a prior adversary hearing violated constitutional requirements and was subject to a motion to suppress. In so holding, the court stated:

"We regard it as settled that the First and Fourteenth Amendments require that there be an adversary judicial hearing and determination of obscenity before a warrant may be issued to search and seize the single copies of allegedly obscene films. Compliance with the proscriptions of the Fourth Amendment is not sufficient . . . Where one's First Amendment rights are exercised by exhibition, restraint clearly follows from seizure of the film to be exhibited." 486 P.2d at 1181.

Similarly, the Supreme Court of Arkansas in Bullard v. State 481 S.W.2d 363 (Ark.1972), held that a prior adversary hearing was necessary before the seizure of an allegedly obscene motion picture film. In reversing the conviction for exhibiting an allegedly obscene motion picture film, it was held that "the trial court erred in refusing to suppress as evidence the copy of the film, The Affairs of Aphrodite, that was seized by Constable Paul Jewell when he arrested Bullard." 481 S.W.2d at 365.

Apparently every United States Circuit Court of Appeals to consider the question has held that there must be a judicial-adversary hearing on the question of obscenity prior to the seizure of a motion picture film from a theatre as evidence of an obscenity violation.[1] Such a hearing would not cripple law enforcement and would serve the interests of free expression in a

---

1. United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970) ; Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), cert. denied, 396 U.S. 985, 90 S.Ct. 477, 24 L.Ed.2d 449 (1969) ; Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970) ; Cambist Films, Inc. v. Duggan, 420 F. 2d 687 (3d Cir. 1969) ; Drive In Theatres, Inc. v. Huskey, 435 F.2d 228 (4th Cir. 1970) ; Hanby v. State, 479 P.2d 486 (Alaska 1970).

free society. To require such a hearing would not preclude prosecution. An ex parte restraining order or subpoena duces tecum could insure a film would not be transported out of the state before such a hearing could be held. Therefore I respectfully dissent to this decision in view of the United States Supreme Court's decisions interpreting the rights under the United States Constitution.

## OPINION ON PETITION
## FOR REHEARING

PER CURIAM:

In the District Court, Oklahoma County, Case No. CRF–71–1432, appellant, Vernal C. Melton, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Exhibiting an Obscene Movie. His punishment was fixed at one (1) year imprisonment in the County Jail and he was assessed a fine of one thousand dollars ($1,000). From that judgment and sentence, a timely appeal was perfected to this Court in the above entitled cause. On July 5, 1973, appellant filed an application and petition for rehearing requesting this Court review our opinion of June 20, 1973. After a study of the new authority submitted by appellant in his petition, we have determined a review of the issues in this case is in order.

The facts reveal that on June 19, 1971, defendant displayed the movie entitled "Touch Me" at the Sooner Theater, Oklahoma City, Oklahoma. On that date, two Oklahoma City police officers viewed approximately three-fourths of the film and at the conclusion of their observation, determined the film they observed to be an obscene film and that a crime had been committed in their presence. Upon concluding the film to be obscene, the officers proceeded to the projection booth, arrested defendant, and seized the film in question, all of which was done without a warrant.

On appeal defense counsel argued the seizure of the film in the case at bench was not constitutionally reasonable submitting two fundamental assignments of error. First he submitted that under the circumstances, the officers' observations of the film and conclusions the film contained obscene matter, the exhibition of which constituted a crime committed in their presence, was not legally sufficient ground for arrest of defendant and seizure of the film. Second he submitted the seizure was unlawful as an adversary hearing on the content of the film was not conducted prior to the film's seizure. In our opinion of June 20, 1973, we rejected both of the above assignments of error setting forth our opinion which in substance stated a prosecution for the violation of obscenity laws should be governed by the same rules as a prosecution of any other alleged violation of the criminal code. Consequently, this Court held a police officer was able to observe a movie, competent to determine whether or not the movie contained obscene matter, and able to arrest the responsible parties for a violation of an obscenity statute committed in his presence. On June 25, 1973, five days following the issuance of the opinion in the above entitled cause, the Supreme Court of the United States handed down several decisions involving obscenity convictions, one of which Roaden v. Kentucky, U.S., 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), is directly in point with the issues in the case at bench.

In *Roaden*, supra, the factual setting revealed the sheriff of Pulaski, Kentucky, accompanied by a district prosecutor, purchased tickets to a movie entitled "Cindy and Donna". The sheriff observed the film in its entirety, concluded the film violated a State obscenity statute, and at its conclusion, proceeded to the projection booth and arrested petitioner. Contemporaneously, and incidental to arrest without a warrant, the sheriff seized one copy of the film for use as evidence. Ultimately, defendant was charged with exhibiting an

obscene movie and was later convicted. The defense moved to suppress the evidence arguing it to be the product of an unlawful seizure. On appeal, the United States Supreme Court narrowly defined the issue presented as follows:

> "The question presented in this case is whether the seizure of allegedly obscene material, contemporaneous with and as an incident to an arrest for the public exhibition of such material in a commercial theatre, may be accomplished without a warrant."

The Court held a police officer cannot seize a film without a warrant upon his conclusion the film is obscene as "nothing prior to seizure afforded a magistrate an opportunity to 'focus searchingly on the question of obscenity.' " In *Roaden, supra,* the Supreme Court very specifically stated a seizure of a film purportedly containing obscene matter may not be made without a warrant. See Heller v. State of New York, U.S., 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), for the procedural guidelines in the issuance of a warrant in a case of this nature.

Although this Court firmly believes the procedural requirements of due process should be applied uniformly to all offenses, not imposing a greater standard of reasonableness to one offense than another, the Mandate of *Roaden, supra,* requires the seizure of an allegedly obscene movie be incidental to a legally sufficient warrant. It is this Court's opinion our original opinion on this issue is founded upon a more reasonable application of the law of search and seizure; however, the Supreme Court of the United States has specifically stated in a case virtually identical to the case at bench the procedure this Court previously approved is not constitutionally sufficient. We reversed our position on this matter only for the reason the highest court in this land, by its Mandate, has compelled us to do so. Therefore, the conviction is reversed and remanded with instructions to dismiss.