James H. HERMAN, Andrew R. CHAJA
and Donald LOWE *v.* STATE of Arkansas

CR 74-48

Opinion delivered July 1, 1974
[Supplemental Opinion on Denial of Rehearing P. 864A.]

*R. W. Laster,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen.; *Lee A. Munson,* Pros. Atty., 6th District Ct., by: *John Wesley Hall Jr.,* Dep. Pros. Atty., for appellee.

CARLETON HARRIS, Chief Justice. On August 28, 1973, the Pulaski County Prosecuting Attorney was notified by counsel for Beaver Amusement Corporation, owner and

operator of the Adult Cinema located at 310 Rock Street, Little Rock, Arkansas, that his client intended to exhibit the motion picture film "Deep Throat" in Little Rock, commencing on September 1, 1973. The staff of the Prosecuting Attorney and Little Rock Police Department were invited to an advance private showing, and counsel agreed to release the film to the police after the showing in order that a preliminary judicial determination as to obscenity could be made prior to its scheduled public exhibition. After this advance showing, the film was voluntarily given to the police by the manager of the Adult Cinema, and on the following day, was shown to Judge Joel C. Cole, Judge of the North Little Rock Municipal Court, a court of record with county-wide jurisdiction in Pulaski County. Applying the test set out in *Miller* v. *California,* 413 U.S. 15, 93 S. Ct. 2607, Cole held that the film was obscene as that term is defined in Ark. Stat. Ann. § 41-2730 (Supp. 1973).[1] The film was then returned to Adult Cinema, and despite the holding by Judge Cole, and warnings by the Prosecuting Attorney that showing of the film would subject the employees of the theater to arrest, appellants proceeded to publicly exhibit the film to paying audiences. Appellants were arrested and charged with violation of Ark. Stat. Ann. § 41-2729 (Supp. 1973), *viz.,* exhibition of obscene film, and upon trial before a jury in the Pulaski County Circuit Court, were found guilty, and fined $2,000 each. From the judgment so entered, appellants bring this appeal. For reversal, it is simply asserted that § 41-2729 is unconstitutional because the definition of obscenity in § 41-2730 (2) was unconstitutional on its face before judicial construction. Several sub-points are included in the contention mentioned and we proceed to a discussion of same.

It is asserted by appellants that the statute is defective on its face because it does not limit the area of proscribed material to offensive depictions of sexual conduct, and that the only standard provided by the statute is whether or not the material appeals to prurient interest; also, that the statute does not contain a provision that alleged obscene material may be redeemed because of any measure of social value. We do not agree with these arguments, and both are fully

[1] "(2) 'Obscene' means that to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

answered in *Gibbs* v. *State,* 255 Ark. 997, 504 S.W. 2d 719 (February 4, 1974). There, the appellant pointed out that *Miller* held that the offensive conduct must be specifically defined by the applicable state law, "as written or authoritatively construed", and further, quoted *Miller* in support of his second argument as follows:

> "A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

We disagreed with the first contention, stating:

> "Appellant contends that because of this language and the words 'sexual conduct specifically defined by the applicable state law,' the statute must fall because it neither mentions nor defines sexual conduct. He reads *Miller* as requiring that the sexual conduct which is obscene be spelled out in the statute itself, wholly overlooking the provision that such conduct may be defined by authoritative construction."

The second argument was likewise rejected in *Gibbs* when we said:

> "We have not construed the definition of obscene material in the statute applied in this case. As amicus points out, our decision in *Bullard* v. *State,* 252 Ark. 806, 481 S.W. 2d 363, wherein we held the definition of the word 'obscene' in Ark. Stat. Ann. § 41-2730 sufficiently fair and comprehensive to meet the test of constitutionality, left us with sufficient flexibility for the application of *Miller* standards to our statute. We held in *Bullard* the absence of a requirement that material be 'utterly without redeeming social value' before it could be obscene under Ark. Stat. Ann. § 41-2729, did not render the statute constitutionally deficient, because it is not essential that a statute incorporate every constitutional nuance. Also, we are dedicated to the proposition that we must give an act a construction that

would meet constitutional tests, if it is reasonably possible to do so. *Stone* v. *State,* 254 Ark. 1011, 498 S.W. 2d 634.''

Appellants seem to argue, under their third sub-point that the legislation is overly broad in areas affecting freedom of speech, asserting:

''A statute which regulates speech and is unconstitutional on its face cannot be saved by a narrow construction without a chilling effect on the first amendment rights of persons whose conduct is constitutionally protected.''

The first thing wrong with this argument is that we have already held that the statute here complained of constitutional in *Gibbs* v. *State, supra,* discussed in preceding paragraphs.

Also, in *Miller,* the United States Supreme Court pointed out:

''This Court has recognized that the States have a legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles.''

In language that is pertinent to the argument here advanced by appellants, our high court also said:

''The dissenting Justices sound the alarm of repression. But, in our view, to equate the free and robust exchange of ideas and political debate with commercial exploitation of obscene material demeans the grand conception of the First Amendment and its high purposes in the historic struggle for freedom. It is a 'misuse of the great guarantees of free speech and free press . . . . ' *Breard* v. *Alexandria,* 341 U.S., at 645. The First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people

approve of the ideas these works represent. 'The protection given speech and press was fashioned to assure unfettered interchange of *ideas* for the bringing about of political and social changes desired by the people,' *Roth* v. *United States, supra,* at 484 (emphasis added). See *Kois* v. *Wisconsin,* 408 U.S., at 230-232; *Thornhill* v. *Alabama,* 310 U.S., at 101-102. But the public portrayal of hard core sexual conduct for its own sake, and for the ensuing commercial gain, is a different matter. \*\*\*

"We do not see the harsh hand of censorship of ideas—good or bad, sound or unsound—and 'repression' of political liberty lurking in every state regulation of commercial exploitation of human interest in sex."

Appellant's third point is without merit.

It is next argued that the constitutionality of the Arkansas statute should be determined according to the judicial standards involved at the time of the offense, i.e., at the time of the showing of the film, our statute had not been specifically upheld. The offense was committed in September, 1973, and *Gibbs* was decided in February, 1974. The important fact to be considered is that *Miller* was handed down on June 21, 1973, nearly two and one-half months before appellants allegedly violated the Arkansas obscenity statute. As pointed out by appellee, since obscenity adjudication is limited to the standards announced by the United States Supreme Court as the final arbiter of obscenity law, appellants were certainly on notice that *Miller* could be applied to their actions.

Let it be remembered that, following *Miller,* other obscenity cases pending were remanded to the state courts in order that those courts might review such cases in accordance with the standards set out in *Miller.* The cases remanded, of course, involved actions which were consummated *before* the *Miller* determination.

Again, in the case before us, there was local court action which certainly should have had the effect of putting appellants on notice; the film was viewed by the municipal judge prior to its showing, and, under *Miller* standards, held to be obscene.

Finally, it is urged that an affirmation of appellants' convictions would be the functional equivalent of an *ex post facto* application of law. The primary authority cited by appellants in this respect is *United States* v. *Lang*, 361 F. Supp. 380 (C.D. Cal. 1973). *Lang* cites *Bouie* v. *City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697. The latter case held that an unforeseeable judicial construction could not be applied retroactively, i.e., it could not be applied to an appeal from an arrest and conviction occurring before the construction. *Bouie* cited an earlier case, defining an *ex post facto* law as one that makes an action done before the passing of the law, and which was *innocent* when done, criminal; \*\*\* or that *aggravates* a crime, or makes it *greater* than it was, when committed."

It has already been pointed out in the discussion of point four that the actions of appellants in the instant case could not be deemed "innocent"; to the contrary, ample warning had been given, both under *Miller* and the Order of the North Little Rock Municipal Court, that the showing of the film could be viewed as a violation of the Arkansas statute. The rationale argued by appellants was specifically rejected in *United States* v. *Marks*, 364 F. Supp. 1022 (1973) by the United States District Court (E.D. Ky.), where the court said:

"It should initially be noted that the Ex Post Facto Clause is intended to apply to statutory enactments, not judicial construction. Frank v. Mangum, 237 U.S. 309, 35 S. Ct. 582, 59 L. Ed. 969 (1915); United States ex rel. Almeida v. Rundle, 3d Cir., 383 F. 2d 421 (1967), cert. denied 393 U.S. 863, 89 S. Ct. 144, 21 F. Ed. 2d 131 (1968). Although Bouie v. City of Columbia, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), did hold that a retroactive application of a court interpretation may offend the Due Process Clause, it is evident that the factors present in the obscenity area render that case easily distinguishable; the Bouie upholding should be applied only to decisions which are ' "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue. . . " '. Id. at 354, 84 S. Ct. at 1703. As admitted by the defendant, the previous uncertainty in the realm of obscenity has only been settled by the recent Supreme Court decisions. The Miller group did not create a new definition of illegal

conduct, but merely clarified earlier concepts of obscenity of which the defendants were constructively aware. Rosen v. United States, 161 U.S. 29, 16 S. Ct. 434, 40 L. Ed. 606 (1896); Nash v. United States, supra; United States v. Wurzbach, supra. Further, the Court's action in remanding Miller and its accompanying cases to the lower courts for re-evaluation in light of the clarified standards intimates that the use of the Miller standard in the case at bar is entirely proper; prospective application would have been decreed if constitutional violation had been feared."[2]

Summarizing our views with regard to the arguments set forth in points four and five, we think it is obvious that appellants are in no position to contend that they innocently exhibited the film to the public, or that they were surprised by the application of the *Miller* standards to their prosecution.

For the reasons heretofore set out, the judgments are affirmed.

It is so ordered.

### Supplemental Opinion on Denial of Rehearing
### delivered September 16, 1974

CONSTITUTIONAL LAW—DUE PROCESS—VALIDITY OF OBSCENITY STATUTE. —The obscenity statute could not be held to lack fair notice as to proscription or deny due process guaranteed by the Fifth Amendment because of being too vague to support a conviction where judicial construction of the statute did not create new definitions of illegal conduct but merely clarified prior conceptions of obscenity making the meaning of the statute more definite in its application to obscenity prosecutions.

CARLETON HARRIS, Chief Justice. On rehearing, a p - pellants cite the decision of the New Hampshire Supreme Court in *State* v. *Harding*, N. H., 320 A. 2d 646, upholding the constitutionality of the New Hampshire obscenity law, but dismissing the conviction, holding that the defendant had not had sufficient warning because the statute had

[2 *Lang* was specifically rejected by the court which noted four contrary decisions to that holding.

not previously been construed by the New Hampshire court. They also cite *Miranda* v. *Hicks,* decided on June 4, 1974, 15 CrL. 2309, where the court invalidated the California obscenity statute which had been construed in the light of *Miller,* holding that the prohibition of hard core pornography in materials containing "graphic depictions of sexual activities" did not provide fair notice to those who would depict sexual activity. The court held that the term "hard core" pornography was no more precise than the term "obscenity" and the language "graphic depiction of sexual activity" did not meet the specificity test. We do not find these cases persuasive for on June 24, the United States Supreme Court in *Hamling, et al* v. *United States,* — U.S. —, 94 S. Ct. 2887, 4 L. Ed. 2d 590 (1974)[³] involving a conviction for mailing and conspiring to mail an obscene advertising brochure, cited *Roth* v. *United States,* 354 U.S. 476 (1957), mentioning that it found in that case that the statute did not deny the due process guaranteed by the Fifth Amendment because "too vague to support conviction for crime", again reiterating that finding, and then stating:

> "Nor do we find merit in petitioners' contention that cases such as *Bouie* v. *City of Columbia,* 378 U.S. 347 (1964), require reversal of their convictions. The Court in *Bouie* held that since the crime for which the petitioners there stood convicted was 'not enumerated in the statute' at the time of their conduct, their conviction could not be sustained. Id., at 363. The Court noted that ' a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.' 378 U.S., at 352. But the enumeration of specific categories of material in *Miller* which might be found obscene did not purport to make criminal, for the purpose of 18 U.S.C. § 1461, conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning of the federal statute involved here 'more definite' in its

---

[³]This case was decided one week before the present opinion was handed down though our opinion had already been written. Since *Hamling* was not in conflict with *Marks,* but rather, confirmed our reasoning, the opinion was handed down without further change.

application to federal obscenity prosecutions. *Bouie* v. *City of Columbia*, 378 U.S., at 353. Judged by both the judicial construction of § 1461 prior to *Miller,* and by the construction of that section which we adopt today in the light of *Miller,* petitioners' claims of vagueness and lack of fair notice as to the proscription of the material which they were distributing must fail."

Petition denied.