**Charles E. CONNERS, d/b/a Butterfield Trail Newstand, et al., Plaintiffs,**

**v.**

**Ray RILEY et al., Defendants.**
**No. FS–73–C–64.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.
May 13, 1975.

H. Clay Robinson, of Pearce, Robinson & McCord, Fort Smith, Ark., for plaintiffs.

Jerry L. Canfield, of Daily, West, Core & Coffman, Fort Smith, Ark., for defendants.

PAUL X WILLIAMS, Chief Judge.

## MEMORANDUM OPINION

This is an action brought by the Plaintiffs, individually, and as members of a class, seeking a declaratory judgment declaring an ordinance of the City of Fort Smith, Arkansas, to be unconstitutional; and to enjoin the individual Defendants from prosecuting or threatening to bring prosecutions pursuant to the ordinance. A hearing was held on June 21, 1973, on Plaintiffs' Motion for Preliminary Injunction and the Motion to Dismiss filed by the Defendants. This Court denied Plaintiffs' Motion for Preliminary Injunction and directed counsel to submit simultaneous briefs dealing with the issues raised by the Defendants' Motion to Dismiss. For the reasons hereinafter set forth, this Court is of the opinion that the Defendants' Motion to Dismiss should be granted.

## FINDINGS OF FACT

1. The individual Plaintiff, Charles E. Conners, is the operator of a newsstand in the City of Fort Smith, Arkansas.

2. The corporate plaintiff is a distributor of pocket books and magazines to various retail outlets in the City of Fort Smith.

3. The Defendant, Ray Riley, is the City Administrator of the City of Fort Smith, Arkansas.

4. The Defendant, Carl Beyer, is the Chief of Police of the City of Fort Smith, Arkansas.

5. The individual Defendants, Charles Jones, Curtis Balch, Paul Rivaldo and Bill Reather, are each members of the Police Department of the City of Fort Smith, Arkansas.

6. On May 15, 1973, the City of Fort Smith, Arkansas, duly enacted Ordinance No. 3092 regulating the direct commercial distribution of certain explicit sexual materials to young persons and also to prohibit the open, public display of certain explicit sexual materials. The complete text of Ordinance No. 3092 is attached as an appendix to this opinion. After the enactment of Ordinance No. 3092, members of the Police Department of the City of Fort Smith, Arkansas, visited a number of retail stores in the City of Fort Smith, Arkansas, for the purpose of advising the proprietors thereof of the enactment of Ordinance No. 3092 and to ask for cooperation in complying with the Ordinance.

7. On June 12, 1973, the Defendants Jones and Balch entered the establishment of the Plaintiff Conners for these purposes.

8. No threats or insinuations of prosecution were made by the Defendants Jones and Balch to the Plaintiff Conners.

9. As of the hearing on June 21, 1973, no prosecutions had been commenced under Ordinance No. 3092 and there have been none to this date.

### I Standing and/or Actual Controversy

This is an action for declaratory relief. 28 U.S.C. Section 2201 provides that a United States District Court may enter a declaratory judgment in otherwise appropriate cases if an "actual controversy" exists between the parties to the proceeding. This requirement of "actual controversy" is also frequently referred to as "standing". These phrases refer to the jurisdictional facts which must exist before a federal district court will entertain a case under 28 U.S.C. Section 1343, 42 U.S.C. Section 1983, or any other jurisdictional statute.

The Plaintiffs rely on the case of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, the Dombrowski decision is not the latest expression of the United States Supreme Court on the jurisdictional question involved in this case. In a series of opinions decided on February 23, 1971, the United States Supreme Court comprehensively discussed the question of federal court intervention in pending, threatened and possible state court criminal prosecutions. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Many of these Supreme Court decisions commented on the Dombrowski decision, and the majority of the Court in the Younger decision clarified and clearly limited the breadth of the Dombrowski decision. See Younger v. Harris, 401 U.S. 37, at 47–53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Each of the above decisions with the exception of the Boyle case, involved pending state court criminal prosecutions. In these cases the Supreme Court made it clear that a federal court should not interfere in such proceedings in the absence of a showing of bad faith prosecution. In the Boyle decision the Court considering the question of jurisdiction in the instance of possible state court prosecutions, and several of the United States circuit courts and district courts have applied the Boyle decision in such instances.

In the Boyle case, several groups of Negro residents of Chicago, Illinois, sought declaratory and injunctive relief against state and municipal officials with reference to several Illinois statutes which plaintiffs alleged had been used in arresting some of the plaintiffs. The plaintiffs alleged that the defendants had threatened to enforce all of the statutes for the purpose of harassing and intimidating the plaintiffs. Justice Black at 401 U.S. 80–81, 91 S.Ct. 760 stated for a majority of the Courts:

"It is obvious that the allegations of the complaint in this case fall far short of showing any irreparable injury

from threats or actual prosecutions under the intimidation statute or from any other conduct by state or city officials. *Not a single one of the citizens who brought this action had ever been prosecuted, charged, or even arrested under the particular intimidation statute which the court below held unconstitutional.*" (Emphasis Added.)

Justice Black continued by stating that such allegations. would not support the disruption of the state system of criminal justice since the allegations *"in the last analysis amount to nothing more than speculation about the future"*. 401 U.S. at 81, 91 S.Ct. at 760. (Emphasis Added.)

Several recent lower federal court cases interpreting and applying the *Boyle* decision should be reviewed. Cases directly supporting the *Boyle* decision include Gordon v. Lanbrieu, 442 F.2d 926 (5th Cir. 1971), where, .on the basis of Boyle and other Supreme Court decisions handed down on the same date, the 5th Circuit held that an action seeking a declaration by the federal court of the unconstitutionality of certain New Orleans city ordinances should be dismissed after the trial court was informed in oral argument that the prosecutions questioned had been dismissed and that no prosecutions were threatened.

In Carter v. Chief of Police, 468 F.2d 900 (5th Cir. 1972), the 5th Circuit dismissed an action by an individual seeking an injunction against state court criminal prosecutions and invoking the jurisdiction of 28 U.S.C. Section 1343 (3). The Court noted that the petition contained no allegation of pending or threatened state court criminal prosecutions. The Court upheld the district court's dismissal of the action citing the Boyle case and also citing language from the *Younger* case at 401 U.S. 42, 91 S. Ct. 746 to the effect that "persons having no fears of state prosecution except those that are imaginary or speculative are not to be accepted as appropriate plaintiffs."

In Thevis v. Seibels, 464 F.2d 613 (5th Cir. 1972) it was held that court prosecutions, whether pending or threatened, do not justify Federal Court intervention in the absence of proof of bad faith, harassment or other extraordinary circumstances.

■ Under the facts of this case as presented in the hearing and on the pleadings, the Court is of the opinion that there is no actual controversy between the parties to this suit and the individual plaintiffs have no standing to seek declaratory relief. Much as was the fact in the *Boyle* case, Plaintiffs have sought out in advance of prosecutions or even threats of prosecution a declaration of their rights with reference to a criminal ordinance which Plaintiffs feel might be interpreted in a way so as to deprive them of certain rights. The conclusion is inescapable that in applying the facts of this case to the legal principles of the *Boyle* decision no valid federal claim is presented.

## II ABSTENTION DOCTRINE

■ In addition to and independent of the foregoing, the Court is also of the opinion that this is an appropriate case in which this Court should abstain from jurisdiction even if jurisdictional facts existed. The federalism bases for the doctrine of abstention is well expressed in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The doctrine still validly applies in this area as shown by recent U. S. Supreme Court decisions, Schlesinger v. Councilman, (1975) 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591; Kugler v. Helefant (1975) 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15, and in the case of Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed. 2d 505 (1974) although the United States Supreme Court held that abstention was not proper. It again reaffirmed the doctrine enunciated in *Younger* and stated:

"Unlike three of the appellees in Younger v. Harris, 401 U.S., at 41 [91

**1248**

S.Ct., at 749], petitioner has alleged threats of prosecution that cannot be characterized as 'imaginary or speculative,' id., at 42 [91 S.Ct., at 749]. He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted."

Accordingly we find the doctrine of abstention proper herein. As aptly pointed out in the *Boyle* case, supra.

"The policy of a century and a half against interference by the federal courts with state law enforcement is not to be set aside on such flimsy allegations as those relied upon here."

### III FACIAL CONSTITUTIONALITY OF ORDINANCE No. 3092

The plaintiffs have asked the court to declare the Fort Smith City Ordinance in question unconstitutional. Having found no actual controversy, and because we adhere to the doctrine of abstention, the Court is not required to rule on the constitutionality of this ordinance. However, we deem it advisable in this case to discuss the merits of plaintiff's contentions.

In the case of Gibbs v. State, 255 Ark. 997, 504 S.W.2d 719 (1974) the Arkansas Supreme Court was called upon to determine the constitutionality of Ark.Stats. Ann. 41–2729—31 (Supp.1973) which prohibited the exhibition or possession of any obscene film. The pertinent provisions of Ark.Stats. reads as follows:

"41–2729. Obscene films—Sale or possession unlawful.—Hereafter, it shall be unlawful for any person knowingly to exhibit, sell, offer to sell, give away, circulate, produce, distribute, attempt to distribute, or have in his or her possession any obscene film.

"41–2730. Definition of obscene film law.—The following words, terms and phrases used in this Act [§§ 41–2729— 41–2731], shall, for the purpose of this Act, have the meanings respectively ascribed to them in this Section.

(1) 'Person' means any individual, partnership, firm, association, club, corporation or other legal entity.

(2) 'Obscene' means that to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.

(3) 'Film' means motion picture film, still picture film, slides, and movie film of any type. [Acts 1967, No. 411, § 2, p. 937.]

"41–2731. Penalties.—Any person who knowingly exhibits, sells, offers to sell, gives away, circulates, produces, distributes, or attempts to distribute any obscene film shall be guilty of a felony, and upon conviction thereof shall be fined not more than $2,000.00 or be imprisoned for a period not less than one (1) year nor more than five (5) years, or be both so fined and imprisoned. Any person who shall have in his or her possession such obscene film shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000.00 or be imprisoned in the county jail for a period not to exceed one (1) year, or both. [Acts 1967, No. 411, § 3, p. 937.]"

After discussing other facets of the case the court stated:

"The only remaining question is the constitutionality of the statute under which *Gibbs* was convicted. Appellant contends that, in the light of Miller v. California, [413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)] Ark.Stats.Ann. §§ 41–2729 to 41–2731, being Act 411 of 1967, are *unconstitutionally over broad, vague and indefinite*." (Emphasis added.)

After applying the principles enunciated in the *Miller* case the Court found the statute was not unconstitutionally overbroad and that the trial court had properly applied the tests of *Miller* in making the determination that the statute was valid.

In the case of Herman et al. v. State, 256 Ark. 840, 512 S.W.2d 923, cert. denied 420 U.S. 953, 95 S.Ct. 1337, 43 L. Ed.2d 431 (1975); the Ark. Supreme Court was again called upon to determine the constitutionality of Ark.Stats. Ann. § 41–2729. It was contended said statute was unconstitutional because the definition of obscenity in § 41–2730 was unconstitutional on its face before judicial construction.

In reaffirming the validity of the statute referred to in the *Gibbs* case the court stated:

"It is asserted by appellants that the statute is defective on its face because it does not limit the area of proscribed material to offensive depictions of sexual conduct, and that the only standard provided by the statute is whether or not the material appeals to prurient interest; also, that the statute does not contain a provision that alleged obscene material may be redeemed because of any measure of social value. We do not agree with these arguments, and both are fully answered in Gibbs v. State, 255 Ark. 997, 504 S.W. 2d 719 (1974). There, the appellant pointed out that *Miller* held that the offensive conduct must be specifically defined by the applicable state law, 'as written or authoritatively construed', and further quoted *Miller* in support of his second argument as follows:

'A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.'

We disagree with the first contention, stating:

"Appellant contends that because of this language and the words "sexual conduct specifically defined by the applicable state law," the statute must fall because it neither mentions nor defines sexual conduct. He reads Miller as requiring that the sexual conduct which is obscene be spelled out in the statute itself, wholly overlooking the provision that such conduct may be defined by authoritative construction.'" (Emphasis added.)

The second argument was likewise rejected in *Gibbs* when we said:

"We have not construed the definition of obscene material in the statute applied in this case. As amicus points out, our decision in Bullard v. State, 252 Ark. 806, 481 S.W.2d 363, wherein we held the definition of the word 'obscene' in Ark.Stat.Ann. § 41–2730 sufficiently fair and comprehensive to meet the test of constitutionality, *left us with sufficient flexibility for the application of Miller standards to our statute.* We held in Bullard the absence of a requirement that material be 'utterly without redeeming social value' before it could be obscene under Ark.Stat.Ann. § 41–2729, did not render the statute constitutionally deficient, *because it is not essential that a statute incorporate every constitutional nuance.* Also, we are dedicated to the proposition that we must give an act a construction that would meet constitutional tests, if it is reasonably possible to do so. Stone v. State, 254 Ark. 1011, 498 S.W.2d 634." (Emphasis added).

■ Both cases enunciated the doctrine that even in obscenity cases the Court must give the statute a construction that would meet constitutional tests if reasonable and there was nothing improper with judicial construction to this effect.

■ As previously noted the entire Fort Smith Ordinance is attached hereto —and upon applying the above enunciated principles to its provisions we do not find that the Ordinance is facially unconstitutional or that plaintiffs have been deprived of any constitutional rights.

Furthermore, the Plaintiffs have ignored the doctrine of variable obscenity laid down by the United States Supreme

Court in the case of Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L. Ed.2d 195. In the *Ginsberg* case, the appellant challenged the constitutionality of New York Penal Law Section 484–H. The appellant had been convicted of selling two "girlie magazines", depicting female nudity to a 16 year old boy. The statute questioned in *Ginsberg* provided:

> (b) "Nudity" means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breasts with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernible turgid state.

In upholding the validity of the New York statute the Court observed, p. 639, 88 S.Ct. p. 1280:

> "The well-being of its children is of course a subject within the State's constitutional power to regulate, and, in our view, two interests justify limitations in § 484–h upon the availability of sex material to minors under 17, at least if it was rational for the legislature to find that the minors' exposure to such material might be harmful. First of all, constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' Prince v. Commonwealth of Massachusetts, supra [321 U.S. 158, at 166, 64 S.Ct. 438, at 442, 88 L.Ed. 645]. The legislature could properly conclude that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility. Indeed, subsection 1(f)(ii) of § 484–h expressly recognizes the parental role in assessing sex-related material harmful to minors according 'to prevailing standards in the adult community as a whole with respect to what is suitable material for minors.' Moreover, the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children.

> "The State also has an independent interest in the well-being of its youth. The New York Court of Appeals squarely bottomed its decision on that interest in Bookcase, Inc. v. Broderick, *supra,* 18 N.Y.2d [71], at 75, 271 N.Y.S.2d [947], at 951, 218 N.E.2d, at 671. Judge Fuld, now Chief Judge Fuld, also emphasized its significance in the earlier case of People v. Kahan, 15 N.Y.2d 311, 258 N.Y.S.2d 391, 206 N.E.2d 333, which had struck down the first version of § 484–h on grounds of vagueness. In his concurring opinion 15 N.Y.2d, at 312, 258 N.Y.S.2d, at 392, 206 N.E.2d, at 334, he said:

>> "While the supervision of children's reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society's transcendent interest in protecting the welfare of children justify reasonable regulation of the sale of material to them. It is, therefore, altogether fitting and proper for a state to include in a statute designed *to regulate the sale of pornography to children special standards, broader than those embodied in legislation aimed at controlling dissemination of such material to adults.*"
>> (Emphasis Added).

> "In Prince v. Commonwealth of Massachusetts, *supra,* 321 U.S., at 165, 64 S.Ct. at 441, this Court, too, recognized that the State has an interest *'to protect the welfare of children'* and to

see that they are 'safeguarded from abuses' which might prevent their 'growth into free and independent well-developed men and citizens.' " . . . (390 U.S. 629, 88 S.Ct. 1280, 20 L.Ed.2d 203–204) (Emphasis added.)

The Supreme Court went on to conclude that the New York legislature could permissibly find that the display of nudity was harmful to minors and could therefore be prohibited.

■ The *Ginsberg* doctrine applies not only in the context of an actual sale of material in question to a minor but is equally viable in the situation where the material is either displayed publicly or displayed in an area to which children have access. Thus, in State v. Rabe, 79 Wash.2d 254, 484 P.2d 917 (1971), the defendant displayed a movie at a drive-in theater which was not obscene but was sexually explicit. The Washington Supreme Court held that Ginsberg was applicable in this situation as well.

The United States Supreme Court, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258, reversed the *Rabe* decision for a reason unrelated to the question at issue here. In a separate concurring opinion Chief Justice Burger made it clear that it was not the Court's intent to strike down statutes dealing with display or explicit sexual materials.

> "Public displays of explicit materials such as are described in this record are not significantly different from any noxious public nuisance traditionally within the power of the States to regulate and prohibit, and, in my view, involve no significant countervailing First Amendment considerations."

Also, in *Miller* the United States Supreme Court pointed out:

> "*This Court has recognized that the States have a legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or*

*of exposure to juveniles.*" (Emphasis added.)

## CONCLUSIONS OF LAW

1. Plaintiffs have not met the jurisdictional requirement of "standing" and/or "actual controversy".

2. The facts of this case justify applying the doctrine of abstention even if the jurisdictional prerequisites had been met by the Plaintiffs.

3. Ordinance No. 3092 is not facially unconstitutional.

An Order will therefore be prepared by the Clerk dismissing this action.

## APPENDIX

### ORDINANCE NO. 3092
### EFFECTIVE JUNE 15, 1973

AN ORDINANCE REGULATING THE DIRECT COMMERCIAL DISTRIBUTION OF CERTAIN EXPLICIT SEXUAL MATERIAL TO YOUNG PERSONS AND PROHIBITING THEIR OPEN PUBLIC DISPLAY.

BE IT ORDAINED AND ENACTED BY THE BOARD OF DIRECTORS OF THE CITY OF FORT SMITH, ARKANSAS, THAT:

SECTION 1: Purpose. It is the purpose of this Ordinance to regulate the direct commercial distribution of certain explicit sexual materials to young persons in order to aid parents in supervising and controlling the access of children to such material. The Board of Directors finds that whatever social value such material may have for young persons can adequately be served by its availability to young persons through their parents. It is also the purpose of this Ordinance to prohibit open public display of certain explicit sexual materials, in order to protect persons from potential offense through involuntary exposure to such materials.

SECTION 2: Offenses defined—A person is guilty of a misdemeanor if he or she (a) knowingly disseminates explicit sexual material, as hereinafter de-

fined, to young persons or (b) knowingly displays "explicit sexual material" for sale in an area to which young persons have access, unless such material has artistic, literary, historical, scientific, medical, educational or other similar social value for adults or (c) knowingly places explicit sexual material upon public display, or if he knowingly fails to take prompt action to remove such a display from property in his possession after learning of its existence.

SECTION 3: Definitions—For the purpose of this Section:

a. "Young person" means any person less than 17 years of age.

b. "Explicit sexual material" means any pictorial or three dimensional material depicting human sexual intercourse, masturbation, sodomy (i. e. bestiality or oral or anal intercourse), direct physical stimulation of unclothed genitals, flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals, buttocks, or female breasts; provided however, that works of art or of anthropological significance, or materials presented in a program of education in a church, school or college, shall not be deemed to be within the foregoing definitions.

c. "Disseminate" means to sell, lease or exhibit commercially and, in the case of an exhibition, to sell an admission ticket or pass, or to admit persons who have bought such a ticket or pass to the premises whereon an exhibition is presented.

d. "Display for sale" in an area to which young persons have access means display of material for sale so that young persons may see portions of the material constituting explicit sexual pictorial material.

e. Material is placed upon "public display" if it is placed on or in a billboard, viewing screen, theatre marquee, newsstand, display rack, window, showcase, display case or similar place so that matter bringing it within the definition of "explicit sexual material" is easily visible from a public thoroughfare or from the property of others.

f. "Knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief, which warrants further inspection or inquiry of both of the following:

(1) the character and contents of any material described herein which is reasonably susceptible of examination, and

(2) the age of the person; provided, however, that an honest mistake shall constitute an excuse from liability hereunder if a reasonable bona fide attempt is made to ascertain the true age of the person.

SECTION 4: Defenses—It shall be an affirmative defense to a prosecution under this Section for the defendant to show:

(1) That the dissemination was made with the consent of a parent or guardian of the recipient, that the defendant was misled as to the existence of parental consent by a misrepresentation made by a person holding himself out as a parent or guardian of the recipient, or that the dissemination was made to the recipient by his teacher, or clergyman in the discharge of official responsibilities;

(2) That the recipient was married.

SECTION 5: Exemption for broadcast—The prohibition of this Section shall not apply to broadcasts or telecasts through facilities licensed under the Federal Communications Act, 47 U.S.C. Section 201 et seq.

SECTION 6: Penalties—Any person violating the provisions of this Ordinance will be subject to a fine not to exceed $25 provided however, that each

day a violation of this Ordinance continues will constitute a separate offense for which a maximum fine will be $15 per day for the second and subsequent days of violation.

PASSED AND APPROVED this 15th day of May, 1973.